STATE of Minnesota, Respondent,

v.

Jacqueline ROTT, Appellant.

No. 81–796.

Supreme Court of Minnesota.

Dec. 14, 1981.

C. Paul Jones, Public Defender, and Margaret LaMarche, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Justice.

This is an appeal by a criminal defendant from concurrent 3-year prison terms imposed by the district court and executed for five convictions for theft by check of over $150 based on guilty pleas. Theft by check of over $150 is a severity level II offense. Although defendant had three 1978 misdemeanor convictions for check offenses, she had a criminal history score of zero. The presumptive sentence for one with such a score who commits such an offense is 1 year and 1 day stayed. The issue on appeal is whether the trial court's double departure—increasing sentence length and executing sentence—was justified by aggravating circumstances. We reduce defendant's sentence to 2 years, *State v. Evans*, 311 N.W.2d 481 (Minn.1981), and affirm as modified.

The offenses in question were committed as part of a scheme which began on May 22, 1980, when defendant opened a checking account at the Cherokee State Bank with a deposit of $100. In opening the account, she used her maiden name and the address of 228 W. Robie, which is apparently across from where friends of hers lived. She was issued low-numbered checks but soon ordered 400 checks starting with a high number. This request passed through the bank without notice and the checks were delivered on June 5.

From then until December 30, 1980, when she was arrested, defendant wrote a large number of checks at various Twin Cities area stores, using identification cards she obtained from the Minnesota Highway De-

partment and SLS Enterprises on May 23, 1980. The account was closed by the bank on June 13, 1980, because of the large number of overdrafts. It is unclear how much property she obtained using these checks but she admitted at the sentencing hearing that the figure was probably somewhere between $16,000 and $20,000 worth.

The five counts of theft by check over $150 filed against defendant in Ramsey County District Court represented only a small number of checks. The plea bargain obtained was that she would not be prosecuted for other checks passed in Ramsey County from May 1980, through December 1980. (Similar charges were pending in other counties, one in Dakota, two in Hennepin.)

Defendant claimed both at the time she pled guilty and at the time of sentencing that her husband had pressured her to participate in this scheme and that he had sold most of the items she had purchased with the checks and used the money himself. At the time of these proceedings he was in custody on state and federal charges and defendant was planning to divorce him. She claimed she had never committed any crimes before she met him and would not do so again now that she was free of him.

The district court departed in two ways, first by increasing the length of the prison term from the presumptive term of 1 year and 1 day to 3 years, next by executing sentence rather than staying execution.

We hold that execution of sentence was justified by the trial court's implicit determination that defendant was unamenable to probation and that some prison time was needed in view of her prior failure at rehabilitating herself when she received probation for three similar convictions in 1979. *State v. Park*, 305 N.W.2d 775 (Minn.1981).

We hold that increasing the length of the prison term was justified on the ground that this was a major economic offense. Minnesota Sentencing Guidelines and Commentary, II.D.2.b.(4) (1980), provides that the term may be increased if:

(4) The offense was a major economic offense, identified as an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Here, factors (a), (b), and (c) apply if one is justified in looking at the conduct underlying the charges of which the defendant was convicted. Significantly, the defendant admitted that the offenses of which she was convicted were part of an on-going scheme or course of conduct and admitted that she committed all the offenses, even the uncharged ones, and that they were all related. Under these circumstances, we conclude that it was proper for the trial court to rely on factors (a), (b), and (c). *See State v. McClay*, 310 N.W.2d 683 (Minn. 1981).

Affirmed as modified.