STATE of Minnesota, Respondent,

v.

Barry Ronald GROSS, Appellant.

No. C6–82–1366.

Supreme Court of Minnesota.

April 8, 1983.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

The issue on this sentencing appeal is whether the record establishes the presence of aggravating circumstances justifying a durational departure.

Defendant is a 35-year-old man with a record of six prior felony convictions. The instant offense, attempted theft by shoplifting of property valued at more than $150 but not more than $2,500, occurred on Thursday, January 21, 1982, at a clothing store in the Rosedale Shopping Center. When a store employee saw defendant and his female companion, Janice Marie Richardson, enter the store that day, he was immediately suspicious because the two had been in the store the previous Sunday and had given clerks "the run around." When the employee approached them on the 21st and offered to assist them, defendant said, "No, we are just looking." The employee continued to watch them and saw defendant hand Ms. Richardson sportcoats after he tried them on. The employee noticed that she did not return them to the rack but concealed them under her coat on her arm. When defendant and Ms. Richardson began to walk past the checkout counter toward the exit, the clerk stopped them. Defendant denied knowing Ms. Richardson. Defendant and Ms. Richardson were taken to the manager's office, then turned over to Mall Security and then to the Roseville police. Ms. Richardson had possession of seven pairs of slacks in a plastic bag and three sportcoats under her overcoat. All the items, which had a retail value of $1,262.50, were from the store in question.

Defendant and Ms. Richardson were charged by complaint with four counts each: theft based on taking; theft based on retaining; theft based on concealing; and attempted theft. Minn.Stat. §§ 609.17, 609.52, subd. 2(1) (1982). Represented by a public defender, defendant pleaded guilty to the charge of attempted theft in exchange for the dismissal of the three other charges.[1] Defendant admitted that he participated with Ms. Richardson in the attempted theft and that the property was valued at more than $150 but not more than $2,500. After accepting the plea, the trial court put defendant and defense counsel on notice that it would consider departing from the presumptive sentence because of defendant's long record. Defense counsel protested in advance, saying that he felt this was a "garden variety" case of attempted theft by shoplifting.

Defendant had a criminal history score of seven (based on six felony points and one custody status point). Theft of property

---

1. At the time he pleaded guilty, defendant had a similar charge pending against him in another county. That charge had not been dismissed as of the date of sentencing in this case.

valued at more than $150 but not more than $2,500 is a severity level III offense. The presumptive sentence for a severity level III offense by a person with a criminal history score of six or more is 32 (30–34) months in prison. Under Minnesota Sentencing Guidelines and Commentary, II.G. (1982), the presumptive sentence length for an attempted offense is ½ the presumptive sentence length for the completed offense, provided that no sentence for an attempt should be less than 1 year and 1 day in length. The presumptive sentence for the offense in this case was 16(½ of 32) months in prison.

The presentence investigation report summarized defendant's version of the offense as follows:

The defendant states that he and his girl friend, Janice Richardson, were at the store for the purpose of shoplifting. The defendant claimed to have difficulty remembering details of this offense as he has been involved in many similar offenses. The defendant states that he may have visited Juster's several days before the offense, but could not be sure. He states that he handed Janice some sportcoats and she concealed them under her coat. She was then apprehended when attempting to leave the store.

The defendant indicated that "somebody orders" specific merchandise which he then steals. He receives from one-quarter to one-third the value of the material. The defendant indicates that he was not using drugs at the time of the offense, but started again within a matter of days. He indicates that he and Janice were not stealing very often at this time, but that they had become financially overextended and needed money. They had planned to use this money to pay bills and rent.

The report indicated that defendant has a history of heroin addiction and noted that his accomplice, Ms. Richardson, was then in long-term treatment for a drug problem. The report opined that the present offense was not related to defendant's problem with heroin. It suggested that defendant's request that he be placed in a treatment program stemmed from his desire to avoid returning to prison. It also pointed out that defendant had failed on probation and in treatment numerous times before. The report concluded by characterizing the offense of conviction as a "planned, sophisticated attempt to steal merchandise valued considerably in excess of the statutory maximum." It recommended that defendant be sentenced according to the Sentencing Guidelines to 16 months in prison.

At the departure hearing, defense counsel argued that the offense of conviction was "a typical felony theft by a person with a long criminal record" and that if shoplifting was an economic crime, this one certainly was not a major economic crime. The trial court stated that the "principal" basis for departing was "the professional nature of [defendant's] criminality," evinced by defendant's admission that the shoplifting was "on order." Specifically, the court said that "this isn't just the usual theft off the street in some store by some poor person who is in need of clothing or who is in need of money for food" but that this was "sophisticated shoplifting." Other reasons cited by the court were defendant's repeated failures on probation and parole and his extensive prior record. The court then proceeded to impose a sentence of 30 months in prison, which is the maximum permitted by law for the attempted offense in question. This appeal followed.

We hold that there were no aggravating circumstances present which would justify the departure. Accordingly, defendant's sentence is reduced to 16 months in prison, the presumptive sentence for the offense.

■ Defendant's long criminal history was already taken into consideration in determining his criminal history score, and that score in turn was used to determine the presumptive sentence. Defendant's criminal history was not an appropriate basis for the durational departure. *State v. Erickson,* 313 N.W.2d 16, 18 (Minn.1981). Defendant's prior failures on probation and treatment do not provide a basis for the durational departure (but would support a

dispositional departure in the form of execution of a presumptively stayed sentence). *State v. Park,* 305 N.W.2d 775 (Minn.1981).

■ The only other factor that the trial court relied upon was the fact that in the court's opinion defendant is a "sophisticated" and "professional booster," who shoplifts "on order." The state amplifies on this in its brief, arguing that defendant committed a major economic offense. The Sentencing Guidelines define a major economic offense as:

[A]n illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Minnesota Sentencing Guidelines and Commentary, II.D.2.b.(4) (1982).

We have had recent occasion to review durational departures that were based on a consideration of the course of conduct underlying the offense. For example, in *State v. Rott,* 313 N.W.2d 574 (Minn.1981), the defendant committed a series of thefts by check. That scheme began when she opened a checking account with a deposit of $100 and subsequently obtained a large number of high numbered checks. From June to the end of December 1980, when she was arrested, she wrote a large number of checks at various Twin Cities stores obtaining property valued at somewhere between $16,000 and $20,000. Pursuant to a plea bargain, she pleaded guilty in Ramsey County to five counts of theft by check over $150 on condition that she would not be prosecuted for other checks passed in Ramsey County. In upholding a durational departure, we held that factors (a), (b) and (c) applied "if one is justified in looking at the conduct underlying the charges of which the defendant was convicted." We held that the trial court was justified in looking at the conduct underlying the charges because the defendant admitted that the offenses of which she was convicted were part of an on-going scheme or course of conduct, admitted that she committed all the offenses, even the underlying ones, and admitted that they were all related. Similarly, in *State v. Brigger,* 316 N.W.2d 512 (Minn.1982), the defendant, a compulsive check forger, entered a straight guilty plea to aggravated forgery—uttering ($150 to $2,500) based on a check for $450. We upheld a durational departure because there were "multiple victims or multiple incidents per victim" (he forged 8 checks in all) and the total amount obtained in the underlying course of conduct was $3,650, which is substantially greater than the $150 minimum for defendant's conviction. Other cases bearing on the issue of the manner in which the underlying course of conduct should be considered in deciding whether to depart are *State v. Womack,* 319 N.W.2d 17 (Minn. 1982), and *State v. Garcia,* 302 N.W.2d 643 (Minn.1981).

We must be cautious in upholding durational departures in cases in which it is necessary to look at the underlying course of conduct in order to reach the conclusion that the defendant's conduct was sufficiently serious as to justify the departure. Both in *Rott* and *Brigger* the victims of the underlying scheme were identified and the

prosecutor was able to establish that the amounts taken substantially exceeded the maximum amount for the offenses to which the defendants had pleaded guilty. In this case the defendant admitted that he had been involved in many similar offenses and he described his method of operation, saying that someone "orders" an item and that he then steals it. However, he also stated that he had not been stealing much lately. We do not know when the "many similar offenses" occurred and we do not know what defendant meant by "many" or what amounts were involved. This case is also distinguishable from *Rott* and *Brigger* in that defendant committed the offense in question by physical means. The definition of a major economic offense speaks of illegal acts committed by other than physical means. In conclusion, we hold that this was not a major economic offense.

▉ Because there were no aggravating circumstances justifying the durational departure, defendant's sentence is reduced from 30 months to 16 months.

Affirmed as modified.

KELLEY, Justice (dissenting).

I must respectfully dissent.

I concur with the majority opinion that under the Minnesota Sentencing Guidelines defendant's long criminal history and his previous record of failures on probation are not grounds to be considered by a trial judge in making a durational departure at the time of sentencing. However, in my view, I cannot distinguish the durational departure in this case from those approved by this court in *State v. Rott,* 313 N.W.2d 574 (Minn.1981), and in *State v. Brigger,* 316 N.W.2d 512 (Minn.1982). In both of those cases, the charges arose out of theft by check or by forgery. The majority opinion emphasizes that in those cases the victims of the underlying course of conduct had been identified and that it had been established that the amounts taken by the schemes exceeded the maximum amount for the offenses to which the defendant had pleaded guilty. In this case, the defendant admitted that he had been involved in many

similar offenses and that he stole merchandise on "order." At the time of this plea, defendant had similar charges pending against him for similar crimes in Hennepin County. I conclude that there was a factual basis for the departure. I suggest we attempt to make too fine a distinction when we affirm departures on the ground the victims have been identified and the approximate amounts stolen verified, but refuse to approve departures when the sentencing court has admission from the defendant of his modus operandi, that he had been involved in many similar instances, and when he had been charged with apparently the same sort of crimes in another county.

Moreover, I am not convinced this case is otherwise distinguishable from *Rott* and *Brigger.* The majority attempts to distinguish those cases by saying Gross committed this crime by "physical means" whereas in the two cited cases the perpetrators used "other than physical means." Minnesota Sentencing Guidelines and Commentary, II. D.2.b.(4) (1982). Slipping garments into a bag concealed under a coat to me is no more "physical means" than committing theft by forging and passing checks. Both involve "physical means." I conclude defendant did commit an economic offense—and that it was major because of his modus operandi. Therefore, I would affirm the trial court's sentencing departure.

PETERSON, Justice (dissenting).

I join in the dissenting opinion of Justice Kelley.