STATE of Minnesota, Respondent,

v.

**Richard D. CARR, Appellant.**

**No. C1–83–1110.**

Supreme Court of Minnesota.

Feb. 1, 1985.

---

C. Paul Jones, Public Defender, Kathy King, Mark Anderson, Asst. Public Defenders, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Henn. Co., Atty., Richard Osborne, Beverly Wolfe, Vernon E. Bergstrom, J. Michael Richardson, Asst. County Attys., Minneapolis, for respondent.

KELLEY, Justice.

Following execution of a search warrant at his house, which resulted in the discovery of burglary tools, stolen property and drugs, defendant was charged by complaint with possession of burglary tools, receiving stolen goods having a value of $1,000 or more, and possession of a Schedule II controlled substance with intent to sell. Later, a deputy sheriff who participated in the execution of the search warrant was charged with an unrelated criminal offense and the prosecution moved to dismiss the drug charge. Apparently the prosecution felt it could not prove the intent to sell a controlled substance charge without relying on the officer's testimony. A district court jury found defendant guilty of the two remaining charges. The more serious of the two offenses, receiving stolen property, is a class VI offense when the amount involved is more than $2,500. The presumptive sentence for the offense when committed by a person with defendant's criminal history score (six or more) is 65 (60–70) months in prison. The trial court sentenced defendant to 120 months in prison, which is the maximum sentence duration permitted by statute for the offense. The trial court also imposed a concurrent term of 32 months, which at that time was the presumptive sentence for possession of burglary tools (a class III offense) by a person with defendant's criminal history score. On this appeal from judgment of his conviction, defendant contends: (1) that the omnibus court erred in denying his motion to suppress on Fourth Amendment grounds; (2) that the trial court erred in admitting irrelevant and unfounded evidence and in excluding evidence of the criminal charges pending against the deputy; and (3) that the trial court erred in departing durationally from the presumptive sentence. We affirm.

1. Defendant's first contention is that the omnibus court erred in denying his motion to suppress on Fourth Amendment grounds. He argues that the affidavit in support of the application for the warrant failed to establish probable cause and that the warrant authorized a general exploratory search.

(a) The affidavit in support of the application for the warrant contained information received from a number of different informants. This information indicated involvement by defendant in drugstore burglaries, in the sale of drugs from his house, and in trading drugs for stolen property. The least stale information included: (i) recent information from an informant, who had given information that had led to a number of drug arrests and convictions, that one Vicky Muncy was stealing telephone equipment from her employer, Northwestern Bell, and trading the equipment to defendant for drugs and that the informant had been with other people when they went to defendant's place and traded stolen property for drugs; (ii) recent information from another informant, who in the past had provided information that had been verified, that defendant was still selling drugs for money or trading the drugs for stolen property; and (iii) recent information from another informant, who in the past had provided information that had been verified, that he knew Vicky Muncy was taking stolen telephone equipment to defendant on an almost daily basis and trading it for drugs and that defendant had admitted that he was dealing with her. Independent police investigation also showed that vehicles belonging to known drug traffickers were frequently seen outside defendant's house and that Northwestern Bell and the police were investigating Muncy and believed that during her recent-

ly-terminated employment she had stolen approximately $20,000 in telephone equipment.

■ (a) In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *reh'g. denied*, —— U.S. ——, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), the United States Supreme Court abandoned what had become known as the "two-pronged *Aguilar* test" for evaluating affidavits based on information received from informants in favor of the totality-of-the-circumstances standard. *Illinois v. Gates*, 103 S.Ct. at 2328–33. We believe that the affidavit in this case—which contained a strong showing of probable cause to believe that defendant was in the continuing business of distributing drugs from his house, either for money or stolen property—would have satisfied even the more rigid *Aguilar* test. *See State v. Siegfried*, 274 N.W.2d 113, 114 (Minn.1978).

(b) Defendant's related argument is that the search warrant authorized a general exploratory search. Defendant argues that the warrant was not specific enough in describing the items to be searched for and seized, and accordingly, left the boundaries of the search almost entirely with the searching officers' discretion. He argues further that the authorization to search for documents and papers was too broad.

■ Defendant's arguments have no merit. The warrant authorized the officers to search for stolen property. The affidavit clearly established probable cause to believe that the officers would find stolen telephones on the premises. In fact, the officers did find what obviously were stolen telephones. The fact that the officers seized scores of other items does not mean that the warrant authorized a general exploratory search. When the police entered the house they found a small warehouse of television sets, stereos, and other items that were obviously stolen. When police, while lawfully executing a search warrant, come upon stolen property, they have a right under the plainview seizure doctrine to seize the property. For a full discussion of the doctrine, *see* 2 W. LaFave, *Search and Seizure* § 4.11 (1978). The only conceivable challenge to application of the doctrine in this case would be that it was not "immediately apparent" to the officers that the property in question was stolen. *State v. Smith*, 261 N.W.2d 349 (Minn.1977) (if officers do not have reason to believe that the property is property listed in the warrant, then they may not examine the property unless it is immediately apparent to them, without examining the property first, that the property is stolen). We believe, however, that the officers clearly were justified not only in examining the property in question but in seizing it. The officers had probable cause to believe that defendant was in the business of trading drugs for stolen property. Further, the "quantity and placement of the articles were such that they obviously were not on the scene for ordinary use." 2 W. LaFave, *Search and Seizure* § 4.11(b) at 172 (1978). *See State v. Streitz*, 258 N.W.2d 768 (Minn. 1977). Under the circumstances, the seizure of the property was valid.

■ We agree with defendant that magistrates and reviewing courts should closely scrutinize warrants so that they do not loosely authorize seizure of private papers. In this case, however, the affidavit established that defendant was in the business of selling drugs and receiving stolen property, with his house as a base of operations, and therefore the issuing judge properly authorized the officers to search for the papers and records relevant to these offenses. Defendant argues that it was conjectural that the officers would find such papers. We reject that contention. We also point out that in fact the officers did find such papers. One notebook contained jottings indicating that it was a record book relating to stolen property. Other documents seized included a bank teller's manual, information relating to check verification, blank birth certificate forms and temporary driver's license forms, and papers connecting defendant to the house.

2. Defendant next argues that the trial court erred in a number of its evidentiary rulings.

█ (a) First, defendant argues that there was insufficient foundation for the admission of a bag of burglary tools found in the search. We disagree. The foundation consisted of testimony by one officer that he found and looked at the contents of the bag in the house, testimony by a second officer that he photographed the contents of the bag at the house, and testimony by the first officer that he took the contents out at the station the next day and that they were again photographed. The bag and its contents were easily identifiable and, in fact, the contents were identified by the officers as being items seized in the search of the house. Under *State v. Hager*, 325 N.W.2d 43 (Minn.1982), the foundation clearly was adequate.

█ (b) Defendant also argues that it was improper to admit property that was not proven to be stolen, because those items of property were irrelevant. This argument is without merit. Under Minn.R. Evid. 401, any evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The prosecutor was unable to prove that any of the items in question was stolen, but that does not mean that the items were not relevant. Although the prosecutor could not prove that the items were stolen, he did show that some of them had altered serial numbers or no serial numbers on them. Further, "the quality and placement of the articles were such that they obviously were not on the scene for ordinary use." 2 W. LaFave, *Search and Seizure* § 4.11(b) at 172 (1978). In short, the items were relevant to the issue of defendant's knowledge of whether the items he was charged with receiving illegally were stolen. Defendant's contention that even if relevant they should have been excluded under Minn.R. Evid. 403 as cumulative is without merit. The trial court has broad discretion under Rule 403 and did not abuse that discretion in this case.

█ (c) Defendant's next claim of trial error relates to the admission, over the objection of defense counsel, of evidence that police had received a tip from an informant that there was stolen property at defendant's address. Under our decision in *State v. Hardy*, 354 N.W.2d 21 (Minn.1984), the admission of the evidence, even for the nonhearsay purpose of explaining why the police went to defendant's house, was unjustified because the potential of the evidence being used for an improper purpose outweighed its very limited probative value. This is particularly so, given the fact that the evidence that the officers had obtained a search warrant. The search warrant itself adequately explained the officers' presence at the scene and their search. The error, however, was nonprejudicial in view of the strong evidence of defendant's guilt and the fact that the trial court did give a limiting instruction when the evidence was admitted.

█ (d) Defendant's final claim of trial error relates to the trial court's refusal to let him elicit from the charged deputy, whom defendant called as a witness, that the deputy had been charged with an unrelated criminal offense. Minn.R.Evid. 609 permits the use of convictions to impeach a witness' credibility. The witness was only charged, not convicted, of the unrelated offense. Notwithstanding Rule 609, defense counsel could have been permitted to question the deputy about his criminal conduct if it was relevant evidence under Rule 404(b) (dealing with other-crime evidence) or under the general rule that allows such evidence to show bias of a witness. But the evidence in question was irrelevant to the charges against defendant and would not have tended to show that the deputy was biased against defendant. Each item of evidence used to convict defendant was evidence that was seized either wholly or in part by officers other than the deputy and there was no need for the state or defendant to call the deputy other than to try to confuse the jury.

4. Defendant's final contention is that the upward durational departure from the presumptive sentence was unjustified. The trial court's main basis for departure was that the offense was a major economic offense involving an ongoing fencing and burglary operation that involved trading drugs for merchandise, a high degree of sophistication and planning, and multiple victims.

Under Minnesota Sentencing Guidelines and Commentary II.D.2.b.(4), a trial court may depart in sentencing a defendant for an economic offense if the offense is a nonphysical economic offense and if two or more of the listed aggravating factors are present. Theft by check and forgery are nonphysical economic offenses, but shoplifting is not a nonphysical economic offense. *State v. Gross,* 332 N.W.2d 167 (Minn.1983). We conclude that receiving stolen property, like shoplifting, is not a nonphysical economic offense.

Even though it cannot be said that the offense was a major nonphysical economic offense, the departure still can be justified if it can fairly be said that defendant committed the offense in a particularly serious way. Generally, we believe that fences deserve more serious punishment than thieves, since by their existence they encourage burglary and theft. However, the Guidelines themselves punish fences more severely than thieves. The Guidelines rank receiving stolen property valued at $1,000 or more as a severity level V offense, unless the state can establish that the value of the property was $2,500 or more, in which case the offense is classified as a level VI offense. Minnesota Sentencing Guidelines, Offense Severity Table. On the other hand, theft of property valued at $2,500 or more is classified as a level IV offense. *Id.* Under the circumstances, one could argue that the Guidelines themselves have already taken into account the fact that defendant is a fence in determining his presumptive sentence. However, the state's evidence did not just establish that defendant was in the business of fencing stolen property. It also established that instead of simply paying money for stolen property he also was willing to pay in drugs. In *State v. Schantzen,* 308 N.W.2d 484 (Minn.1981), we stated that the fact that drugs were taken in an aggravated robbery would not distinguish the robbery from the typical aggravated robbery. We stated that while it was reasonable to infer that the drugs taken in the robbery would be illegally distributed in the community, it would not be proper to in effect punish the defendant for what he might do in the future. *Id.* at 487. Although *State v. Higginbotham,* 348 N.W.2d 327 (Minn. 1984), and *State v. Magnan,* 328 N.W.2d 147 (Minn.1983), reaffirmed the *Schantzen* proposition stated above, we further stated that the fact that drugs were taken merits consideration along with the other facts. *Higginbotham,* 348 N.W.2d at 330; *Magnan,* 328 N.W.2d at 150. In this case defendant admittedly paid drugs for stolen property. That fact renders his conduct more serious than the conduct of the typical fence. Considering that fact, along with other facts, including that there were multiple victims and that the offenses occurred over a period of time, we conclude that the durational departure was not unjustified.

Affirmed.