**STATE of Minnesota, Respondent,**

v.

**Andrew Phillip HOROSHAK, Appellant.**

**No. C6–87–480.**

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Jan. 28, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., John DeSanto, Asst. Co. Atty., Duluth, for respondent.

Douglas W. Thomson, Deborah Ellis, Thomson, Hawkins & Ellis, St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Andrew "Nonny" Horoshak was convicted by jury of six counts of receiving stolen property, one count of theft by altering vehicle identification numbers and three counts of theft by possessing, buying or selling property with knowledge that vehicle identification numbers had been altered. Following his convictions and original sentencing, appellant also pleaded guilty to the additional felony of receiving stolen property in connection with a stolen pickup truck.

Appellant challenges the sufficiency of the evidence for one of the convictions of receiving stolen property, for a 1985 Kenworth semi-truck tractor. He also contends that the trial court erred in admitting *Spriegl* evidence during trial. Finally, he challenges the trial court's departure from the presumptive sentence for this offense.

## FACTS

Appellant's convictions for the six counts of receiving stolen property were for possessing or concealing the following: 1) Melroe Bobcat loader, model 742; 2) Melroe Bobcat loader, model 843; 3) 1983 Ford Ranger pickup truck; 4) 1983 Chevrolet Camaro Z–28 automobile 5) 1983 Ford LT–8000 truck; and 6) 1985 Kenworth semi-truck tractor. Appellant appeals the issue of sufficiency of evidence solely for the charge involving the 1985 semi-truck tractor. The facts of this conviction are as follows:

On February 18, 1985, Rihm Motor Company of Bloomington, Minnesota reported the theft of a 1985 Kenworth semi-truck tractor which Rihm purchased in October 1984. The truck was maroon with a conventional cab and a sleeper. There were no significant miles on the truck, it did not have license plates, and the retail price was $106,000.

On April 16, 1985, appellant told James Mancina about a Kenworth semi-tractor truck which he had for sale. Appellant told Mancina that the truck could be seen inside appellant's warehouse near Old Highway 53 south of Eveleth, Minnesota. On the same day, Mancina, Ernie Lund, and Jerry Ohotto went to appellant's warehouse building where they saw a semi-tractor inside the building—a truck which was "brand-new" and dark in color, "possibly maroon," according to testimony. The three could see that the truck had a sleeper unit attached to the cab. Mancina also noticed that the front bumper of the truck was shiny and had no license plate.

On August 14, 1985, Thomas Mattson received a telephone call, allegedly from appellant. In a tape recorded statement made to Officer Suikonen, Mattson said he knew that the caller was appellant even though the caller didn't identify himself. Mattson testified at trial that he didn't know who the caller was and that he was disoriented and intimidated at the time he made the original tape-recorded statement. The caller asked Mattson if he had facilities to work on a semi-tractor, and Mattson told him to put the truck in his workshop garage. Between August 16 and August 18, 1985, a dark red or maroon Kenworth semi-tractor truck was placed in Mattson's garage. The Kenworth truck was observed there between August 19 and August 22 by Tom Mattson, his wife, Linda Mattson, his grandfather, Walter Hill, and his friend, Scott Johnson. The truck Mattson observed was dark red, very dirty, had no extension stacks, and had a sleeper unit attached. At trial, Mattson testified that after the truck was gone from his garage on Monday, August 26, 1985, there was quite a bit of mud on the floor which had been swept into a drain.

On August 21, 1985, Mattson became aware of the recovery of stolen motor vehicles in the Virginia–Eveleth area by law enforcement authorities. He tried to contact appellant, but was unable to reach him. On August 22, 1985, Mattson and his family left their residence for their cabin, leaving the truck in the garage. He was at his cabin from August 22 to August 26, 1985.

On August 21, 1985, while executing a warrant at appellant's warehouse on Old Highway 53, police officers saw two chrome extension stacks for a semi-tractor truck which were approximately 36 inches long and five inches in diameter. On August 25, 1985, law enforcement authorities recovered the stolen Kenworth truck at the Cherry Hill cemetery. At the time the truck was recovered, it was shiny and clean, had no license plates, and was missing the chrome extension stacks. On August 27, 1985, the police officers returned to appellant's warehouse to retrieve the two chrome extension stacks they had seen on August 21, but they did not find them. On August 27 or August 28, Deputy Ronald Issacson talked with Peter Zunich who operates Arrowhead Battery. Zunich told the officer that a few days earlier, the shop loaned a battery large enough to boost or start a semi-tractor truck to appellant.

Based on this evidence, appellant was found guilty by the jury of receiving stolen property, the Kenworth semi-tractor. For this conviction, and five others which were not appealed, the trial court imposed an executed sentence of 80 months, a $10,000 fine and surcharge, and joint and several liability for restitution of $112,387.99.

## ISSUES

1. Was the evidence sufficient to sustain appellant's conviction of receiving stolen property in connection with the stolen 1985 Kenworth semi-tractor?

2. Did the trial court abuse its discretion in admitting *Spreigl* evidence?

3. Did the trial court err in departing upward from the sentencing guidelines?

## ANALYSIS

### I.

Appellant contends that the circumstantial trial evidence was insufficient to support the jury's verdict of guilty. The Minnesota Supreme Court has stated:

> The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*State v. Jacobson*, 326 N.W.2d 663, 666 (Minn.1982). The evidence against appellant is sufficient if, viewed in a light most favorable to the state, it could lead the jury to reasonably conclude, having due regard for the state's burden of proving appellant's guilt beyond a reasonable doubt, that appellant was guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). The stricter standard of appellate review based on circumstantial evidence still recognizes that a jury is in the best position to evaluate the circumstantial evidence surrounding the crime, and its verdict is entitled to due deference. *State v. Anderson*, 379 N.W.2d 70, 75 (Minn.1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986).

Appellant argues the prosecution failed to prove any connection between appellant and the stolen 1985 Kenworth semi-tractor found on August 25, 1985, raising a reasonable doubt as to his guilt. Several points of evidence, however, support the jury's finding of guilty for this conviction.

A brand-new Kenworth semi-tractor truck was recovered at the Cherry Hill cemetery on August 25, 1985. The truck was earlier reported stolen from Rihm Motors Company of Bloomington, Minnesota. Four months earlier, James Mancina, Ernie Lund and Jerry Ohotto saw a truck with similar characteristics on April 16, 1985, while looking through the windows of appellant's warehouse. One of the men was evidently told by appellant that the vehicle was a Kenworth truck. The three identified the newness and color of the truck, the absence of a license plate, and the presence of a sleeper cab.

Between August 16 and August 18, a vehicle, matching the description, except now dirty, showed up in Thomas Mattson's garage following a phone call which Mattson identified as from appellant. Extension stacks were seen on appellant's premises matching the descriptions of what had been on the stolen truck, and after the truck was recovered, there were no stacks on the truck. The truck that Mattson saw in his garage was dirty with dust and road grime, and the truck recovered was shiny and clean. This discrepancy in the condition of the truck is explained, however, because when Mattson returned to his garage and found the truck gone, there was mud and dirt which had been swept into the drain where the truck had been.

Further, Mattson's grandfather saw the truck when it was in Mattson's garage and also after it had been recovered, and he told Mattson that the stolen Kenworth was the same truck he had seen in the garage. Other witnesses reported that a few days before August 27, Horoshak borrowed a battery needed to start a large truck. Finally, the cemetery where the truck was recovered is only 15 minutes drive from Mattson's garage.

The evidence must be viewed in the light most favorable to the prosecution and we must assume the jury believed the state's witnesses and disbelieved any contrary evidence. *See State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981). There was sufficient circumstantial evidence in this case to permit a jury to find beyond a reasonable doubt that appellant was guilty of receiving stolen property, the Kenworth semitractor.

## II.

■ The trial court admitted *Spreigl* evidence through two witnesses. Such evidence is admissible in the discretion of the trial court, if the court determines (1) there is clear and convincing evidence that the defendant participated in the other acts; (2) the evidence is relevant and material to the State's case; and (3) the probative value of the evidence outweighs its potential for unfair prejudice. *State v. Kilker,* 400

N.W.2d 450, 452 (Minn.Ct.App.1987). We will not reverse a trial court's *Spreigl* ruling unless an abuse of discretion is clearly shown. *State v. Doughman,* 384 N.W.2d 450, 454 (Minn.1986).

The trial court permitted *Spriegl* evidence involving the alleged sale of stolen trucks by appellant to James Nartnik and Edward Topping. The court found that the testimony presented in both offers of proof was clear and convincing and the probative character of the evidence outweighed its potential for unfair prejudice. Nartnik testified appellant told him how to disguise a stolen vehicle by switching registration numbers and other identifying characteristics of the vehicles. Topping testified he was convicted on two counts of receiving stolen property for two stolen pickup trucks he purchased from appellant. He testified that he knew the vehicles were stolen when he purchased them because the price for each was much lower than his estimation of retail value, and he did not receive any title documents for either vehicle.

Appellant argues that the *Spriegl* evidence was a subterfuge for impugning appellant's character, and that the prosecution did not establish the requisite "need" for the evidence, so the trial judge should have found the evidence inadmissible.

■ The need of the state is a factor in determining the admissibility of the evidence, but other factors should be considered as well, particularly that the relevance and probative value of the evidence outweighs its potential for unfair prejudice. *See State v. Hinkle,* 310 N.W.2d 97, 99 (Minn.1981). The Nartnik testimony about Horoshak's instruction on changing parts was especially probative because it was the only evidence at appellant's trial of appellant's own words on how to make a stolen truck appear legitimate. Further, the *Spriegl* evidence was admitted pursuant to the "common scheme or plan exception," and was so markedly similar to the crimes charged that there is little question the incidents were part of the fencing operation in which appellant was engaged. *See*

Minn.R.Evid. 404(b); *State v. Forsman*, 260 N.W.2d 160, 167 (Minn.1977).

The trial court found the evidence of the uncharged crimes was clear and convincing and the potential for unfair prejudice was outweighed by the probative value of the evidence. Appellant asserts that the need of the prosecution for the evidence is the determinative factor for admissibility. This is unsupported by case law. The need for the evidence remains a factor, but other factors should be considered as well. *See Hinkle*, 310 N.W.2d at 99. The trial court did not abuse its discretion in admitting the evidence of uncharged crimes.

### III.

▆ Appellant was sentenced to 80 months imprisonment for receiving stolen property, a 26 month upward departure. Appellant challenges the departure from the presumed sentence. The trial court has discretion to depart from the sentencing guidelines if the offense involves "substantial and compelling circumstances." *State v. Garcia*, 302 N.W.2d 643, 647 (Minn. 1981); Minnesota Sentencing Guidelines II. D.01 comment.

> The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

*State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). The trial court is accorded broad discretion and we will not interfere absent a "strong feeling that the sanction imposed exceeds or is less than that 'proportional to the severity of the offense of conviction and the extent of the offender's criminal history.'" *State v. Schantzen*, 308 N.W. 2d 484, 487 (Minn.1981) (quoting Minnesota Sentencing Guidelines, Statement of Purpose and Principles).

▆ The trial court made written findings of fact for the reasons for departure, concluding principally that the crime was "more serious" than the typical case because it involved stolen property having a value of more than $200,000. The court also found that the operation conducted by defendant was "sophisticated and well-planned criminal activity" and that defendant had been conducting a major fencing operation which adversely affected many victims.

Appellant's offense is not a major economic offense, which would justify departure if two of the statutory factors were present. *See State v. Carr*, 361 N.W.2d 397, 402 (Minn.1985) (receiving stolen property is not a major nonphysical economic offense). The departure is still justified, however, if appellant committed the offense in a particularly serious way. *See e.g., State v. Kirsch*, 338 N.W.2d 45 (Minn. 1983) (where defendant took approximately $20,000 from the same victim in a single ongoing scheme, it was not error to depart upward); *State v. Broten*, 343 N.W.2d 38, 41 (Minn.1984) (where the conduct underlying the arson conviction was more serious than that underlying a typical arson conviction, upward departure was appropriate).

The facts of this case indicate appellant was involved in a major fencing operation. We cannot disagree with the court's conclusion that the offenses were committed in a particularly serious way.

### DECISION

Appellant's convictions and sentence are, affirmed.

Affirmed.