**STATE of Minnesota, Respondent,**

v.

**O'Darius Marcus FIELDS, Petitioner, Appellant.**

**No. C8–87–1100.**

Supreme Court of Minnesota.

May 13, 1988.

C. Paul Jones, State Public Defender, Melissa Sheridan, Minneapolis, for petitioner, appellant.

Tom Foley, County Atty., Steven C. DeCoster, Asst. Co. Atty., Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

AMDAHL, Chief Justice.

In *State v. Fields,* 416 N.W.2d 734 (Minn. 1987), we remanded this case to the Court of Appeals, holding that the Court of Appeals erred in refusing to decide whether, as defendant contended, the trial court erred in departing durationally from the presumptive sentence for the offense of uttering a forged instrument. On remand, the Court of Appeals upheld the departure on the ground that the offense was a "major economic offense." *State v. Fields,* 420 N.W.2d 677, 679–80 (Minn.App.1988). Disagreeing with the conclusion that the offense was a "major economic offense," we reduce petitioner's sentence from 42 months to 21 months.

Defendant pleaded guilty in 1983 to uttering a forged instrument. The presumptive sentence for the offense (a severity level II offense) by one with defendant's criminal history score (7) was 21 months executed. The trial judge, Honorable Joseph P. Summers, said that he wanted "to play double or nothing," that is, depart durationally by doubling the presumptive sentence duration and depart dispositionally by staying execution on condition that defendant successfully complete a course of treatment for chemical dependency at Freedom House. Judge Summers justified the double durational departure by saying that 21 months was not a great "handle" on defendant, that a sentence of 42 months hanging over defendant's head would increase the likelihood that defendant would succeed in treatment. Defendant agreed with this.

Defendant committed the offense of possession of cocaine in Ramsey County in 1987 and was sentenced to 28 months in prison. Honorable William J. Fleming was assigned to preside at the hearing on the revocation of the stay imposed in 1984 for the 1983 property offense, Judge Summers having died. Rejecting defendant's argument that the durational departure was unjustified, Judge Fleming reaffirmed the sentence imposed by Judge Summers.

Defendant appealed to the Court of Appeals. It affirmed, ruling that the issue was not properly before it, that one in defendant's position must either attack the departure on a timely direct appeal from the original judgment of conviction or must file a post-conviction petition and appeal from the denial of post-conviction relief. *State v. Fields,* 413 N.W.2d 275 (Minn.App. 1987).

In *State v. Fields,* 416 N.W.2d 734 (Minn. 1987), we reversed and remanded to the Court of Appeals for consideration of the merits of the issue whether the durational departure was justified.

On remand, the Court of Appeals held (1) that Judge Summers' stated reason for departing was "not necessarily valid" but (2) that the departure was justified on the ground that the offense was a "major economic offense." *State v. Fields,* 420 N.W. 2d 677, 679–80 (Minn.App.1988).

■ Judge Summers' stated basis for the durational departure was not a valid one under the Sentencing Guidelines. *Cf. State v. Dillener,* 336 N.W.2d 268, 269 (Minn.1983) (accepting state's concession that a similar justification for departing was not a proper one). Also, the fact that defendant agreed to the departure at the time of sentencing did not justify the departure. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

■ Under *Williams v. State,* 361 N.W. 2d 840, 844 (Minn.1985), if, as here, the sentencing court gave a reason for the departure but the reason is not adequate to sustain the departure, the departure nonetheless may be sustained on appeal if there is sufficient evidence in the record to establish that there is another basis for the departure. The Court of Appeals here concluded that the departure was justified on the ground that the offense was a "major economic offense."

Minnesota Sentencing Guidelines and Commentary II.D.2.b.(4) (1987) provides that a term may be increased:

(4) The offense was a major economic offense, identified as an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

In determining whether the offense in this case was a "major economic offense," the court properly may consider the course of conduct underlying the charge, since defendant did not deny the underlying conduct. *State v. Srey,* 400 N.W.2d 722, 723 (Minn.1987). The charge against defendant was based on one of several related criminal acts committed by him in a period of a few days. Credit cards, checks and other items were taken in the afternoon burglary of a residence on May 19, 1983. The state never charged defendant with the burglary. Defendant pleaded guilty to a charge of uttering a forged instrument, based on his using one of the stolen credit cards on May 19, 1983, to purchase a VCR at Dayton's Rosedale valued at $858.58. He was caught on May 22 as he was trying to buy another VCR at Ward's Southtown selling for $564.12. The presentence investigation report also indicated that he used the cards or the checks to obtain property valued at $135.98 at

Target Roseville on May 19 and property valued at $184.84 at Target Midway on May 20; he also apparently attempted to obtain property of unspecified value on May 21 at Target Bloomington.

The Court of Appeals based its conclusion that defendant's course of conduct was a "major economic offense" on its belief (a) that the offense involved multiple victims or multiple incidents per victim and (b) that the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the monetary loss specified in the statutes. *State v. Fields,* 420 N.W.2d at 679.

Defendant argues that the total specified monetary loss, about $1,750, was not *substantially* more than that typically involved in a forgery-related offense. In the final analysis, our decision of such an issue "must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *State v. Norton,* 328 N.W.2d 142, 146–47 (Minn.1982). In this case, we agree with the defendant that the total specified monetary loss was not *substantially* more than that typically involved in a forgery-related offense.[1] Under the circumstances, defendant's 1984 sentence for the 1983 offense of uttering a forged instrument is reduced from 42 months to 21 months.

Affirmed as modified.

---

1. Indeed, the state conceded in its brief to the Court of Appeals that "most cases sustaining major economic offense departures have involved much more money than that involved here." *See, e.g., State v. Rott,* 313 N.W.2d 574 (Minn.1981) ($16,000 to $20,000 taken in ongoing check-cashing scheme), and *State v. Brigger,* 316 N.W.2d 512 (Minn.1982) ($3,650 determined to be substantially greater than the $150 minimum for the defendant's conviction).