**William Paul VICKLA, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A09–830.

Court of Appeals of Minnesota.

Feb. 9, 2010.

Marie L. Wolf, Interim Chief Appellate Public Defender, Ngoc Nguyen, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Kevin J. Golden, Assistant County Attorney, Hastings, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and LARKIN, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's denial of postconviction relief, arguing primarily that the district court erred in sentencing him to the statutory maximum under the career-offender statute. Because we conclude that appellant's sentence is unreasonable and excessive, we reverse and remand for resentencing.

## FACTS

Based on allegations that appellant William Paul Vickla and his girlfriend deposited, or attempted to deposit, counterfeit checks, respondent State of Minnesota charged appellant with aiding and abetting offering a forged check over $2,500 in violation of Minn.Stat. §§ 609.05, .631 (2004) (count one), possession of counterfeit checks in violation of Minn.Stat. § 609.528, subd. 2 (2004) (count two), and offering a forged check or checks in violation of Minn.Stat. § 609.631 (2004) (count three).

At a plea hearing, in exchange for the state's agreement to dismiss the remaining counts, appellant pleaded guilty to count one, amended to offering forged checks aggregating over $35,000 in violation of Minn.Stat. § 609.631, subds. 3 and 4(1) (2004). Defense counsel stated on the record that the statutory maximum sentence for the amended charge was 20 years instead of 10 years for the original charge. Appellant testified that he understood that, at sentencing, the prosecutor would argue for a higher-than-guideline sentence, and that if appellant exercised his right to a jury trial, the prosecutor would have to prove to a jury that appellant had five prior felony convictions and that the jury would determine the existence of the felony convictions and whether the convictions and the charged offense established a pattern of criminal conduct. Appellant waived his right to have a jury make those findings and provided a factual basis to support his guilty plea to offering forged checks aggregating over $35,000.

Appellant admitted that: he knowingly and intentionally took counterfeit checks to the bank with the intention that they would be deposited into his account; if he did not actually know the checks were counterfeit, he had a strong suspicion that they might be; he had dealt with a number of the checks and had reason to believe that they were counterfeit; he was not entitled to the funds that were deposited into his account; the value of the checks he possessed and took to the bank for deposit in his account was greater than $35,000; he was pleading guilty because, in fact, he was guilty; he had five or more prior felony convictions; three of his prior convictions were for welfare fraud; and his prior felony convictions and the charged offense formed a pattern of criminal conduct. The district court accepted appellant's guilty plea and scheduled sentencing.

The day before the sentencing hearing on June 20, 2007, probation filed a presentence investigation report (PSI) and a sentencing worksheet. According to the PSI, appellant had 17 prior convictions dating back to 1970, including, among others, convictions of: receiving and concealing stolen property; aggravated forgery; issuing dishonored checks; burglary; aggravated robbery; theft; offering a forged check; fourth-degree criminal sexual conduct; first-degree criminal sexual conduct; and failing to register as a predatory offender. Probation characterized appellant's conviction in this case as his 14th felony conviction since 1970, and noted that appellant "has been described as an opportunistic and versatile criminal and his record reflects that." Probation recommended that the district court commit appellant to the commissioner of corrections as a career criminal and advised the court that it was "able to sentence up to the statutory maximum." Minnesota Statutes section 609.1095, subdivision 4 (2004), the career-offender statute, permits a sentencing court to depart from the presumptive guidelines sentence "if ... the offender has five or more prior felony convictions and ... the present offense is a felony that was committed as part of a pattern of criminal conduct." Probation also recommended that the court order appellant to pay $20,976 in restitution.

On the sentencing worksheet, probation reported that offering forged checks aggregating over $35,000 had a severity level of five under the sentencing guidelines, that appellant's criminal history score was three, and that appellant's presumptive sentence was 33 months' imprisonment.

At sentencing, the district court noted that appellant had a 34–to 35–year history of known criminal activity and five prior felony convictions and concluded that "it's

apparent that it's a pattern of criminal activity." The court found that appellant was not amenable to probation because he did not obey an order not to have contact with minors, did not obey the court's order to cooperate with probation for the completion of his PSI, and refused "to take measures to address reasonable conditions of probation" that had been previously imposed on him. Regarding appellant's mental health, the court noted that although appellant may suffer from depression, he had refused to take measures to address his mental-health issues when he had the ability to do so. Noting that the time appellant had already spent in prison had not resolved "anything in terms of changing [appellant's] conduct," the court sentenced appellant to 240 months' imprisonment and ordered restitution.

Appellant's 240–month sentence constitutes the statutory maximum under Minn. Stat. § 609.631, subds. 3 and 4(1). The sentence is more than 7 times the presumptive sentence of 33 months, based on appellant's criminal history score of 3 and the offense severity level of 5. *See* Minn. Sent. Guidelines IV (2004).

Appellant petitioned for postconviction relief, seeking imposition of the presumptive sentence "because the sentence was excessive and exaggerates [his] criminality." The district court noted appellant's arguments that his 240–month sentence was excessive, exaggerated his criminality, and was ordered without the presence of severe aggravating factors and denied the postconviction petition without a hearing. The court reasoned that: (1) appellant waived his *Blakely* rights; (2) appellant admitted a pattern of criminal conduct; (3) the facts support appellant's admissions; (4) appellant was not amenable to probation; (5) in exchange for appellant's guilty plea, the state dismissed two counts; and (6) appellant's counsel "indicated on the

record" that there had been significant discussion before entering the plea regarding criminal history, the career-offender statute, and the potential result. This appeal follows.

## ISSUE

Is appellant's sentence consistent with the requirements of the career-offender statute, and is the sentence unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court under Minn.Stat. § 244.11, subd. 2(b)?

## ANALYSIS

"On review of postconviction decisions, [appellate courts] extend a broad review of both questions of law and fact." *State v. Ferguson,* 742 N.W.2d 651, 659 (Minn.2007). Legal issues are reviewed de novo. *Id.* "[R]eview of factual matters, however, is limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.* A petitioner seeking a postconviction remedy must establish facts that show, by a preponderance of the evidence, entitlement to relief. *Id.* "A postconviction court properly dismisses a petition for postconviction relief without conducting an evidentiary hearing when the petition and record 'conclusively show that the petitioner is entitled to no relief.'" *State v. Rhodes,* 627 N.W.2d 74, 86 (Minn.2001) (quoting Minn. Stat. § 590.04, subd. 1 (2000)).

Appellant submitted a principal brief and two pro se supplemental briefs to this court. In his principal brief, appellant argues that the district court abused its discretion because his sentence unfairly exaggerates the criminality of his conduct. In his pro se briefs, appellant asserts numerous other arguments.

On appeal, "the court may review the sentence imposed or stayed to determine

whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." Minn. Stat. § 244.11, subd. 2(b). "The court may dismiss or affirm the appeal, vacate or set aside the sentence imposed or stayed and direct entry of an appropriate sentence or order further proceedings to be had as the court may direct." *Id.*

We review a district court's departure from the sentencing guidelines and sentencing enhancements based on the career-offender statute for an abuse of discretion. *State v. Geller,* 665 N.W.2d 514, 516 (Minn.2003); *State v. Munger,* 597 N.W.2d 570, 574 (Minn.App.1999), *review denied* (Minn. Aug. 25, 1999). "Generally, we will not interfere with the district court's discretion in sentencing unless the sentence is disproportionate to the offense." *State v. Blanche,* 696 N.W.2d 351, 378 (Minn.2005).

### *Application of Career–Offender Statute*

Appellant does not challenge the district court's finding that he is a career offender under Minn.Stat. § 609.1095, subd. 4 (2004), but he argues that his sentence should be reversed on the basis that it is excessive and exaggerates his criminality under *Neal,* 658 N.W.2d at 546–49. Because appellant does not challenge his status as a career offender, we need not analyze whether his sentence is consistent with the requirements of the career-offender statute. But we note that the record fully supports the district court's conclusion that appellant is a career offender.

### *Unreasonable or Excessive Sentence*

Appellant relies on *Neal,* 658 N.W.2d at 546–49, to support reversal of his sentence. Neal was convicted of kidnapping and two counts of first-degree aggravated robbery and was sentenced to a total of 576 months' imprisonment. *Neal,* 658 N.W.2d at 539–40. For his convictions of kidnapping and one count of first-degree aggravated robbery, Neal was sentenced as a dangerous offender under Minn.Stat. § 609.1095, subd. 2 (2002), to 480 months and 96 months consecutively, and, on the other count of aggravated robbery, he was sentenced to 108 months concurrently. *Id.* at 540. Neal's 480–month kidnapping sentence constituted the statutory maximum and a quadruple upward durational departure. *Id.* His 96–month aggravated-robbery conviction constituted a double upward durational departure. *Id.* On appeal from his sentence, the supreme court concluded that the district court erred when it sentenced Neal to 480 months for kidnapping under the dangerous-offender statute because the sentence was "not commensurate with the gravity of the crime and therefore [was] excessive and unreasonable." *Id.* at 543, 548.

In its analysis, the *Neal* court cited *State v. Rachuy,* 502 N.W.2d 51 (Minn. 1993), noting that the *Rachuy* court "held that when the legislature enacted the career offender statute, it created statutory grounds for imposing durational departures, up to the maximum statutory sentence," and that the *Rachuy* court did not limit its holding "to a specific type of offense or length of the maximum sentence." *Neal,* 658 N.W.2d at 545. The *Neal* court stated that its "reasoning in *Rachuy* is equally applicable to the dangerous-offender statute," and "conclude[d] that a finding of severe aggravating factors is not required for a district court to impose more than a double durational departure under the dangerous-offender statute." *Id.* at 545–46.

But the *Neal* court stressed that the dangerous-offender "statute does not envision the imposition of the statutory maximum sentence in every case." *Id.* at 546.

And the court expressed concern that the dangerous-offender statute could authorize sentences that may be disproportionate to the severity of the offense, noting that the statute contravenes the purpose of the sentencing guidelines "by authorizing sentences that may be disproportionate to the severity of the convicted offense." *Id.* at 546–47. The court stated that when severe aggravating circumstances are not present, "imposing more than a double durational departure under the dangerous offender statute may artificially exaggerate the defendant's criminality because the defendant's criminal record is considered twice." *Id.* The court further stated that although the statute authorizes "greater than double departures without severe aggravating circumstances," "to avoid disproportionate sentences, courts should use caution when imposing sentences that approach or reach the statutory maximum sentence." *Id.* The court then compared Neal's 480–month kidnapping sentence to other kidnapping sentences and concluded that Neal's sentence was excessive and unreasonable. *Id.* at 547–48.

The state attempts to distinguish *Neal* by citing *State v. Houston,* 689 N.W.2d 556, 561 (Minn.App.2004), *aff'd on other grounds,* 702 N.W.2d 268 (Minn.2005), and arguing that *Houston* limits the application of *Neal* to kidnapping offenses. In *Houston,* this court stated that *Neal* "simply reinforced the importance of using caution when approaching the statutory maximum sentence and ensuring that sentences are proportional to the gravity of the offense." 689 N.W.2d at 560. This court also stated that "the analysis of the [*Neal* ] court and its conclusion regarding the kidnapping sentence stemmed uniquely from the minimal statutory requirements of kidnapping, standards that could lead, in some pertinent circumstances, to unfairly exaggerating the offender's criminality." *Id.* at 561. This court concluded that the analysis in *Neal* had "no relevance" to Houston's drug offense. *Id.*

In this check-forgery case, we conclude that the analysis in *Neal* is relevant. Although we concluded in *Houston* that the analysis in *Neal* was irrelevant to Houston's drug offense, we do not read *Houston* to limit the application of the analysis in *Neal* to kidnapping offenses only. We recognized in *Houston* that *Neal* "reinforced the importance of using caution when approaching the statutory maximum sentence and ensuring that sentences are proportional to the gravity of the offense." *Id.* at 560. Here, we conclude that the *Neal* court's concerns about sentence proportionality are applicable to appellant's sentence for check forgery under the career-offender statute. And we rely on *Neal* for our conclusion that even when dangerous-or career-offender statutes are properly applied, district courts should consider sentences imposed in other cases for the same offense to ensure that a sentence is proportional to the gravity of the offense and not unreasonable or excessive.

 In this case, we apply the analysis in *Neal* to determine whether the district court exercised the caution necessary to ensure that appellant's sentence is proportional to the gravity of offering forged checks aggregating more than $35,000. Because severe aggravating factors are not required to impose on a career offender a sentence that is more than a double upward durational departure, we must determine whether appellant's sentence is "unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court" under Minn.Stat. § 244.11, subd. 2(b). *Neal,* 658 N.W.2d at 546. In addition to the statutory authority, "we have discretion to modify a sentence in the

interest of fairness and uniformity." *Id.* The criminal statute under which appellant was convicted criminalizes offering a forged check, or possessing a forged check with intent to offer it, whether or not the check is accepted, when the conduct is done with intent to defraud. Minn.Stat. § 609.631, subd. 3. When the aggregate amount of forged checks is over $35,000, the statute authorizes maximum imprisonment of 20 years. *Id.,* subd. 4(1). At his plea hearing, appellant admitted that he: received emails from people asking him to cash checks; received the checks and took them to banks and credit unions to get them cashed; intended that the checks would be deposited; "more often than not," was told that the checks were counterfeit; had a suspicion that the checks were going to be counterfeit; attempted to cash checks in an aggregate value exceeding $35,000; and was not entitled to the funds that were actually deposited in his account.

Based on *Neal,* we have attempted to compare appellant's 240–month check-forgery sentence to sentencing departures imposed in other check-forgery cases. 658 N.W.2d at 547. Although we have found no cases involving a similar offense or similar facts that resulted in a similar sentence, and the state has presented none, sentencing departures imposed in forgery- and theft-related cases are helpful in evaluating whether appellant's sentence is unreasonable and excessive.

In *State v. Kortkamp,* the defendant was convicted of check forgery for which the presumptive sentence was 19 months. 560 N.W.2d 93, 94–95 (Minn.App.1997). Kortkamp was sentenced to 60 months as a career offender, based on six prior felony convictions, including five felony burglaries, a felony theft, charged offenses of second-degree assault and financial transaction card fraud, and uncharged conduct

based on police-officer testimony at sentencing. *Id.* at 95. Without addressing the length of Kortkamp's upward durational departure, this court ruled that Kortkamp should be allowed to withdraw his guilty plea because he should have been given notice of the state's intended use of uncharged conduct for establishing his career-offender status. *Id.* at 96–97. Kortkamp's 60–month check-forgery sentence was more than three times the presumptive sentence of 19 months. *Id.* at 95. Even assuming that Kortkamp's sentence was neither unreasonable nor excessive, a comparison of appellant's sentence with Kortkamp's sentence illustrates that appellant's sentence is unreasonable and excessive.

In *State v. Thompson,* a theft-by-swindle case in which the defendant pleaded guilty to nine counts of theft by swindle over $35,000, the defendant received an executed sentence of 114 months' imprisonment, which was a double upward durational departure from the presumptive sentence. 720 N.W.2d 820, 823 (Minn.2006). Thompson's convictions arose out of her embezzlement of more than $600,000 from her employer, a nonprofit public-service agency at which Thompson served as finance manager for eight years. *Id.* Thompson was accused of committing "hundreds of incidents" of embezzlement. *Id.* at 825. Even if the check-forgery conduct of appellant in this case were comparable to Thompson's theft by swindle of more than $600,000, the sentencing departures are substantially disparate.

In *State v. Rott,* the defendant was convicted of five counts of theft by check over $150 for which the presumptive sentence was a stayed sentence of one year and one day on each count. 313 N.W.2d 574, 574 (Minn.1981). Rott committed the offenses as part of a scheme by which she wrote a large number of checks at various stores

and obtained property valued between $16,000 and $20,000. *Id.* at 574–75. Rott also had three similar convictions in 1978 or 1979. *Id.* at 574–75. The district court sentenced Rott to executed concurrent three-year sentences on each count, which constituted dispositional and triple upward durational departures. *Id.* at 574. The supreme court held that the district court was justified in departing from the presumptive sentence but, citing *State v. Evans*, 311 N.W.2d 481 (Minn.1981),[1] reduced Rott's sentence to a double durational departure. *Id.* As with *Thompson*, a comparison of appellant's sentence to Rott's sentence illustrates that the sentencing departures are substantially disparate and that appellant's sentence is unreasonable and unfair.

We conclude that appellant's sentence is not commensurate with the gravity of the crime and therefore is unreasonable and excessive. We recognize that a district court judge sits with a unique perspective on sentencing and is in the best position to evaluate an offender's conduct, but even when the career-offender statute is properly applied, we may vacate or set aside a sentence that is unreasonable or excessive. Minn.Stat. § 244.11, subd. 2; *Neal*, 658 N.W.2d at 546–49. We hold that the district court erred when it sentenced appellant to 240 months for check forgery, and we vacate the sentence and remand to the district court for a determination of a reasonable sentence for the offense.

Appellant raises numerous arguments in his pro se briefs. We have considered these arguments and conclude that none presents a basis for relief. *See Ture v. State*, 681 N.W.2d 9, 20 (Minn.2004) (rejecting pro se arguments without detailing consideration of each argument).

### DECISION

Based on *Neal*, we have reviewed appellant's sentence imposed under the career-offender statute to determine whether it is "unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court" under Minn.Stat. § 244.11, subd. 2(b). Because appellant's 240-month sentence for check forgery is not commensurate with the gravity of the crime, we conclude that it is unreasonable and excessive.

**Reversed and remanded.**

---

1. In *Evans*, the supreme court "articulated the general rule that when a durational departure is justified by compelling factors, the upper departure limit is double the maximum presumptive sentence length." *Neal*, 658 N.W.2d at 544 (citing *Evans*, 311 N.W.2d at 483). The *Neal* court noted that "when severe aggravating circumstances exist, the dou-bling limit of *Evans* does not apply," and stated: "We recently reiterated this exception to the general rule by concluding that departures up to the statutory maximum are appropriate when severe aggravating factors exist." *Id.* (citing *State v. Williams*, 608 N.W.2d 837, 840 (Minn.2000)).