STATE of Minnesota, Respondent,

v.

Margaret THOMPSON, Appellant.

No. A04–1808.

Court of Appeals of Minnesota.

April 5, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

Glenn P. Bruder, Mitchell, Bruder & Johnson, Edina, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; HALBROOKS, Judge; and PORITSKY, Judge.*

## OPINION

HALBROOKS, Judge.

Appellant pleaded guilty to nine counts of theft by swindle over $35,000 and acknowledged that she was giving up her right to a jury determination of the presence of a factual basis for a sentencing departure. The district court found that such a basis existed and sentenced appellant to the presumptive sentence on counts 1–4 and imposed concurrent sentences of 114 months—a double durational departure from the presumptive 57–month sentences—on counts 5–9. Appellant challenges her sentence, arguing that the upward departure violates her right to a jury trial under *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Appellant also argues that the district court (1) should have considered the prosecution's tactic of charging multiple counts and declined to impose a durational departure, (2) erred in viewing appellant's conduct as a whole rather than analyzing the conduct involved in each count in its decision to depart, and (3) erred in failing to provide written reasons

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

for the departure. Because we conclude that appellant's declaration did not constitute a knowing, voluntary, and intelligent waiver of her right to a jury trial under *Blakely*, we reverse and remand for proceedings not inconsistent with this decision. We do not reach the remaining issues.

## FACTS

Appellant Margaret Thompson was employed as a finance manager from 1987 until 2003, by Rueben Lindh Family Center (RLFC), a public-service agency providing services to impoverished citizens. In August 2003, appellant was confronted by RLFC management and accused of embezzlement. Appellant then admitted that she had stolen funds from RLFC by manipulating payroll and expense-reimbursement accounts.

After being terminated by RLFC, appellant was voluntarily interviewed by a Golden Valley police officer. During this interview, appellant admitted to all or substantially all of the allegations of embezzlement. Appellant was accused of committing approximately 300 episodes of embezzlement to steal over $600,000. As a result, appellant was charged with nine counts [1] of theft by swindle over $35,000 in violation of Minn.Stat. § 609.52, subds. 2(4), 3(1), (5) (2002).[2] Appellant subsequently pleaded guilty to all nine counts in a "straight plea." No negotiations were held concerning appellant's sentence.

At the plea hearing, appellant acknowledged that she knew her rights and that she was voluntarily waiving her right to a jury trial and pleading guilty to the counts

charged. Appellant admitted that she had been employed as a finance manager at RLFC and that, in the course of her job, she had control over the employee payroll. She then admitted that she "us[ed] payroll accounts for discharged employees and process[ed] payroll checks under those employee accounts but funnel[ed] the money into [her] own bank accounts[,]" as well as "overpaying [her]self cafeteria plan benefits[.]" Appellant was also asked about the specific incidents enumerated in the complaint.

> [MR. BRUDER]: And, drawing your attention specifically to the chart beginning at the third page of the complaint and continuing on for several pages, uh, that chart itemizes the specific transactions and the amounts that are alleged in each count, is that correct?
>
> [APPELLANT]: Yes.
>
> Q: You have had a chance to review that, correct?
>
> A: Yes.
>
> Q: And you agree that this chart ... is accurate with respect to [c]ounts 1 through 8 of the complaint, is that correct?
>
> A: Yes.
>
> Q: Now, with regard to [c]ount 9 of the complaint, ... that deals with the cafeteria plan benefits, correct?
>
> A: Yes.
>
> Q: Now, you agree that you took ... overpayments from the cafeteria plan, is that correct?
>
> A. Yes.

Appellant then stated that she disagreed with the total amount of the overpayment

---

1. The prosecutor segregated the thefts into time blocks to yield nine separate counts. Appellant concedes that such action was within the prosecutor's authority.

2. Because the violations occurred over a number of years, appellant was charged with violations of the 1995, 1999, 2000, 2001, and 2002 versions of the statute. The relevant elements of the statute are the same in all versions.

alleged in count nine, but agreed that the amount exceeded $35,000.[3] Appellant thus admitted to approximately 300 separate incidents of embezzlement, totaling over $521,000,[4] and occurring over a period of eight years—from 1996 to 2003.

*Blakely* was decided the day before appellant's sentencing hearing. At the sentencing hearing, the potential impact of the *Blakely* decision was broached by the district court.

THE COURT: The first issue is a legal issue with respect to the Supreme Court decision—United States Supreme Court decision that was issued yesterday, *Blakely [v.] Washington,* and there the Supreme Court declared unconstitutional a sentence—a determinant sentencing system where there was an upward departure where the defendant had not acknowledged or put in a factual basis or waived jury trial rights essentially. It's hard to summarize that decision in one sentence, but essentially what the Supreme Court decision written by Justice Scalia said is that defendants, if they wish to have a jury trial right on the question of whether there is proof beyond a reasonable doubt for a factual basis or a state's request or—in the *Blakely* case or the Court's request— Court's decision for an upward departure, they are entitled—defendant is entitled to have that matter decided by a jury. We have discussed this matter quite extensively in chambers this afternoon.

Mr. Bruder, do you wish to address that question?

MR. BRUDER: Yes, I do, Your Honor. Following our discussion in chambers, I had an opportunity to discuss the *Blakely* decision with Ms. Thompson. Quite frankly, I think it's a somewhat complicated concept to explain in simple manners to—fashion to a lay person, but Ms. Thompson has—I believe that I have been able to do so, and *Ms. Thompson has indicated to me that she does not wish to have a jury finding as to the elements that we discussed that she has already admitted to as part of her guilty plea and that, to the extent she needs to waive that right in this proceeding, she is willing to do so.*

THE COURT: Ms. Thompson, do you have any questions about this particular issue that you discussed with your attorney?

[APPELLANT]: No, Your Honor.

THE COURT: Do you wish a jury to decide the question of whether there is a factual basis for a sentencing departure, or do you wish me to decide that question?

[APPELLANT]: I would wish you to decide it, not the jury.

THE COURT: *Do you understand that you have a right for a jury to decide that proof beyond a reasonable doubt, and you are waiving that right or giving up that right, is that correct?*

[APPELLANT]: *Yes, that's correct.*

(Emphasis added.)

The district court subsequently imposed the presumptive sentences for counts 1–4. With respect to counts 5–9, the district court imposed sentences of 114 months—a double durational departure from the presumptive 57–month sentences. The dis-

---

**3.** Count nine alleged overpayments of $75,538.64. Appellant suggested that the amount was approximately $38,000.

**4.** The amount alleged to have been taken in counts 1–8 is as follows: Count 1— $37,011.49; Count 2—$47,263.59; Count 3— $72,944.38; Count 4—$78,383.10; Count 5— $65,950.92; Count 6—$71,945.76; Count 7— $77,941.24; Count 8—$70,405.14.

trict court ordered that all sentences be served concurrently. The court's stated reason for the durational departure was "that the record and the proof establishes beyond a reasonable doubt that this is a major economic offense as defined by the sentencing guidelines and by Minnesota statute." In support of this finding, the district court noted that (1) the counts for which appellant was charged involved hundreds of incidents, including many more than those necessary to aggregate the offenses beyond the $35,000 threshold, (2) the amount taken in each of the counts for which there was a departure was substantially greater than the $35,000 threshold— more than double in all but one instance, (3) appellant's actions evinced a "high degree of sophistication and planning," and (4) appellant's actions violated a fiduciary relationship. This appeal follows.

## ISSUE

Did appellant's declaration constitute a knowing, voluntary, and intelligent waiver of her right to a jury trial under *Blakely?*

## ANALYSIS

■ The decision to depart from the presumptive sentence rests with the district court and will generally not be disturbed absent a clear abuse of discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996). But the *Blakely* argument raises a constitutional question, which this court reviews de novo. *State v. Manning,* 532 N.W.2d 244, 247 (Minn.App.1995), *review denied* (Minn. July 20, 1995).

We begin by noting that the district court did an exemplary job under very difficult circumstances. The district court had only one day to examine and interpret the *Blakely* decision and its possible ramifications. Given the time constraint and the scope of the *Blakely* case, the court's attempt to implement the *Blakely* decision

with no additional guidance is commendable.

■ The state initially argues that appellant did not raise an *Apprendi/Blakely* claim before the district court, and thus the issue is waived. In support of this position, the state cites *State v. Leja,* 684 N.W.2d 442 (Minn.2004). But in that case, the supreme court refused to consider the appellant's *Apprendi/Blakely* argument when the issue had not been raised before this court. *Id.* at 447–48 n. 2. Thus, *Leja* is inapposite.

■ It is true that we will generally not consider issues raised for the first time on appeal. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) (stating that "[t]his court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure"). But here, *Blakely* was raised before and addressed by the district court. Accordingly, this court appropriately considers the issue on appeal.

■ In *Blakely,* the Supreme Court held that the greatest sentence that a judge may impose is "the maximum sentence [that may be imposed] *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* *Blakely v. Washington,* 124 S.Ct. 2531, 2537 (2004) (emphasis in original). A defendant has a Sixth Amendment right to a jury determination of the existence of any fact, except the fact of a prior conviction, that increases the sentence above this maximum. *Id.* at 2543; *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

Contrary to the state's assertion, this court has held that *Blakely* applies to upward durational departures under the sentencing guidelines. *State v. Conger,* 687 N.W.2d 639, 644 (Minn.App.2004), *review*

*granted* (Minn. Dec. 22, 2004).[5] Moreover, this court recently held that, under *Blakely*, an upward durational departure may not be based on an "admission" by a defendant, unless that "admission" is accompanied by the defendant's waiver of his or her right to a jury trial on the aggravating factor. *State v. Hagen*, 690 N.W.2d 155, 158–59 (Minn.App.2004). We have noted that

> [t]he effect of a defendant's admission to an aggravating factor is to waive the defendant's constitutional right to a jury trial on the sentencing issue. The general rule is that *the waiver of a constitutional right must be knowing, voluntary, and intelligent.* ... [Although] [o]ther constitutional rights may be "waived" without actual knowledge of the right involved, ... [a] waiver of the right to a jury trial has been held to require a defendant have knowledge of that right.

*Id.* (citations omitted) (emphasis added). Such a waiver may be oral or written. *Id.* at 159 (citing *State v. Wright*, 679 N.W.2d 186, 191 (Minn.App.2004), *review denied* (Minn. June 29, 2004)).

▮ The question thus becomes whether appellant knowingly, voluntarily, and intelligently waived her right to a jury trial on the aggravating factors. Pursuant to Minn. R.Crim. P. 26.01, subd. 3, a defendant must waive other fundamental rights, in addition to the right to a jury trial, before a case can be tried to the court on stipulated facts. *State v. Halseth*, 653

N.W.2d 782, 785 (Minn.App.2002). Rule 26.01 provides in pertinent part:

> By agreement of the defendant and the prosecuting attorney, a case may be submitted to and tried by the court based on stipulated facts. Before proceeding in this manner, the defendant *shall acknowledge and waive the rights to testify at trial, to have the prosecution witnesses testify in open court in the defendant's presence, to question those prosecution witnesses, and to require any favorable witnesses to testify for the defense in court.* The agreement and waiver shall be in writing or orally on the record.

Minn. R.Crim. P. 26.01, subd. 3 (emphasis added). In *Halseth*, we noted that rule 26.01 is strictly construed. 653 N.W.2d at 784. Accordingly, we held that this rule requires that a defendant *personally* and *explicitly* waive these enumerated rights and "precludes any implied ratification of an attorney's waiver by a defendant's mere presence." *Id.* at 785. The same standard applies when a defendant elects to stipulate at trial to an element of an offense. *See Wright*, 679 N.W.2d at 191 (concluding that the district court erred in accepting a stipulation to proof of an element of an offense without the defendant's personal consent in writing or orally on the record). Because this court has previously noted that there is no basis to distinguish a stipulation to an element of the offense from a stipulation to an aggravating sentencing factor, *Hagen*, 690 N.W.2d at 159, we apply the same standard in this case.

---

5. The supreme court granted review in *Conger*, but stayed additional proceeding of that matter, pending a final decision in *State v. Shattuck*, No. C6–03–362 (Minn. argued Nov. 30, 2004). By order filed in *Shattuck* just a few days earlier, on December 16, the supreme court held that the imposition of an upward durational departure based on aggravating factors not considered by the jury is a

violation of the defendant's rights as articulated in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn. Dec.16, 2004) (per curiam). The supreme court indicated that a full opinion will follow and directed the parties to submit additional briefs on the appropriate remedy. *Id.*

*See also State v. Fairbanks,* 688 N.W.2d 333, 336 (Minn.App.2004), *review granted* (Minn. Jan. 20, 2005) (applying *Blakely* where the district court relied on aggravating factors that were not part of the stipulated trial facts).

Here, appellant did orally waive her right to a jury trial. But she did not explicitly acknowledge and waive her right to testify, to have prosecution witnesses testify, to question the prosecution witnesses, and to require favorable witnesses to testify in her defense. As a result, the record is not sufficient to demonstrate that appellant knowingly, voluntarily, and intelligently waived these rights. Because appellant's sentence violated her right to a jury trial under *Blakely,* the sentence must be reversed and remanded.

As we noted in *Hagen,* "in *Blakely,* the Court did not remand for imposition of a sentence within the 'standard range' under Washington law, but instead remanded 'for further proceedings not inconsistent with this opinion.'" 690 N.W.2d at 160 (quoting *Blakely,* 124 S.Ct. at 2543). Thus, appellant is not automatically entitled on remand to a reduction of her sentence to the presumptive sentence. Be-

cause the appropriate remedy, including the possible impaneling of a jury to determine the sentencing issues, has not been fully litigated, it "must be determined in the first instance by the district court." *Id.*

The *Blakely* issue is dispositive. Accordingly, we do not reach the remaining issues.

## DECISION

Because appellant did not validly waive her right to a jury determination of the existence of aggravating factors, under *Blakely,* the district court erred in sentencing appellant to more than the presumptive maximum sentence under the sentencing guidelines. We remand for further proceedings not inconsistent with this opinion.

**Reversed and remanded.**