**STATE of Minnesota, Appellant,**

v.

**Margaret THOMPSON, Respondent.**

**No. A04–1808.**

Supreme Court of Minnesota.

Sept. 7, 2006.

---

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for Appellant.

Glen P. Bruder, Mitchell, Bruder, & Johnson, Edina, MN, for Respondent.

John M. Stuart, State Public Defender, Benjamin J. Butler, Roy G. Spurbeck, Assistant State Public Defenders, Minneapolis, MN, for Amicus Curiae, Minnesota State Public, Defender's Office.

## OPINION

PAGE, Justice.

Respondent Margaret Louise Thompson pleaded guilty to nine counts of theft by swindle over $35,000. The district court sentenced Thompson to an executed term of 114 months in prison.[1] One hundred and fourteen months is a double durational upward departure from the presumptive sentence under Minnesota's Sentencing Guidelines. Thompson challenged her sentence on appeal, arguing the upward sentencing departure violated her right to a jury trial on sentencing enhancement factors as required under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The court of appeals agreed and reversed Thompson's sentence. We granted the state's petition for further review. Because we conclude that Thompson voluntarily and knowingly waived her right to have a jury make findings on sentencing enhancement factors supporting the upward departure based on proof

beyond a reasonable doubt, we reverse the court of appeals.

Thompson worked at Rueben Lindh Family Center, a nonprofit public service agency, for eight years and became its finance manager. On August 7, 2003, Rueben Lindh terminated Thompson's employment for embezzling over $600,000. On February 3, 2004, the state filed a complaint against Thompson, charging her with nine counts of "theft by swindle aggregated over $35,000" in violation of Minn.Stat. § 609.52, subds. 2(4), 3(1), (5) (2002). Each count alleged that Thompson had "obtained property or services in the aggregated value in excess of Thirty–Five Thousand Dollars ($35,000) from [Rueben Lindh] by swindling the company using artifice, trick, device or other means."

According to the complaint, Thompson stole the money by manipulating terminated employees' payroll accounts and by obtaining fraudulent health care expense reimbursements. The complaint also contained detailed descriptions of Thompson's schemes and a chart itemizing specific transactions related to each count charged.

On April 14, 2004, as a result of an agreement reached between Thompson and the state, Thompson submitted a petition to enter a plea of guilty. The petition stated that Thompson had entered into a "straight plea" with no agreement on sentencing. In the petition, Thompson acknowledged that she had been informed by her attorney and understood, among other things, "[t]hat the maximum penalty the court could impose for this crime * * * is imprisonment for 20 years and/or a fine of $100,000 (per count)." Thompson further acknowledged that she understood that

---

1. Specifically, the district court sentenced Thompson as follows: count 1—21 months; count 2—27 months; count 3—39 months; count 4—45 months; count 5—114 months; count 6—114 months; count 7—114 months; count 8—114 months; and count 9—114 months. The district court imposed each of the sentences to run concurrent to the others.

she had the right to either a jury trial or a court trial and that at such a trial she had the right to confront the witnesses against her, the right to subpoena witnesses on her behalf, the right to testify or to refuse to testify as she so chose, and the right to request the suppression of certain evidence. With that knowledge, she indicated that she was waiving her right to a trial.

At the plea hearing, Thompson pleaded guilty to each of the counts in the complaint. In doing so, she again acknowledged, after inquiry by counsel and by the district court, that she had been informed of her rights, that she understood those rights, and that she was voluntarily waiving her right to a jury trial and pleading guilty to each of the counts charged.

With respect to the factual basis for her plea, Thompson admitted that she had been employed as the finance manager at Rueben Lindh, that she had control over the employee payroll, and that during the relevant time period she "us[ed] payroll accounts for discharged employees and process[ed] payroll checks under those employee accounts but funnel[ed] the money into [her] own bank accounts," as well as "over[paid] [her]self cafeteria plan benefits." She further acknowledged that she had reviewed each allegation in the complaint, including the chart itemizing the specific transactions and amounts detailed in each count of the complaint, and that the chart correctly reflected her thefts related to counts 1 through 8. With respect to count 9, Thompson stated that she disagreed with the total amount of the thefts alleged, but acknowledged that the amount she took exceeded the $35,000 statutory amount required for conviction on that count. Thompson also explained to the court how she took the money and admitted that she took the money with the intent to defraud Rueben Lindh by using a swindle.

At the conclusion of the plea hearing, the prosecutor informed the district court that the state would be seeking an upward sentencing departure to 114 months. Counsel for Thompson indicated that Thompson would oppose an upward departure. Thompson's sentencing hearing took place on June 25, 2004, the day after the United States Supreme Court issued its decision in *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. At the start of the hearing, the following exchange occurred:

THE COURT: The first issue is a legal issue with respect to the Supreme Court decision—United States Supreme Court decision that was issued yesterday, Blakely [v.] Washington, and there the Supreme Court declared unconstitutional a sentence—a determinant [sic] sentencing system where there was an upward departure where the defendant had not acknowledged or put in a factual basis or waived jury trial rights essentially. It's hard to summarize that decision in one sentence, but essentially what the Supreme Court decision written by Justice Scalia said is that defendants, if they wish to have a jury trial right on the question of whether there is proof beyond a reasonable doubt for a factual basis or a state's request or—in the Blakely case or the Court's request—Court's decision for an upward departure, they are entitled—defendant is entitled to have that matter decided by a jury. We have discussed this matter quite extensively in chambers this afternoon.

[Counsel], do you wish to address that question?

[COUNSEL FOR THOMPSON]: Yes, I do, Your Honor. Following our discussion in chambers, I had an opportunity to discuss the Blakely decision with Ms.

Thompson. Quite frankly, I think it's a somewhat complicated concept to explain in [a] simple manner[ ] to—fashion to a lay person, but Ms. Thompson has—I believe that I have been able to do so, and Ms. Thompson has indicated to me that she does not wish to have a jury finding as to the elements that we discussed that she has already admitted to as part of her guilty plea and that, to the extent she needs to waive that right in this proceeding, she is willing to do so.

THE COURT: Ms. Thompson, do you have any questions about this particular issue that you discussed with your attorney?

[THOMPSON]: No, your honor.

THE COURT: Do you wish a jury to decide the question of whether there is a factual basis for a sentencing departure, or do you wish me to decide that question?

[THOMPSON]: I would wish you to decide it, not the jury.

THE COURT: Do you understand you have a right for a jury to decide that proof beyond [sic] a reasonable doubt, and you are waiving that right or giving up that right, is that correct?

[THOMPSON]: Yes, that's correct.

After hearing victim impact statements from several of Thompson's former coworkers and the arguments from counsel for Thompson and the state, the district court sentenced Thompson to 114 months' imprisonment. The court, explaining the aggravating sentencing factors supporting the upward durational sentencing departure, stated as follows: "the record and the proof establishes beyond a reasonable doubt that this is a major economic offense as defined by the sentencing guidelines and by Minnesota Statute." The court further noted that: (1) the counts for which Thompson was charged involved hundreds of incidents, including many more than those necessary to aggregate the offenses beyond the $35,000 threshold; (2) the amount taken in each of the counts for which there was a departure was substantially greater than the $35,000 threshold—more than double in all but one instance; (3) Thompson's actions demonstrated a "high degree of sophistication and planning"; and (4) Thompson's actions violated "trust and confidence" in the "fiduciary relationship as the person who managed the books and handled the money and was entrusted to do that by the organization."

In reversing Thompson's sentence, the court of appeals concluded that Thompson did not knowingly, voluntarily, and intelligently waive her right to a jury trial on the aggravating sentencing factors. *State v. Thompson*, 694 N.W.2d 117 (Minn.App. 2005). Specifically, the court stated that under Minn. R.Crim. P. 26.01, subd. 3, which governs the waiver of a jury trial on stipulated facts, a defendant must explicitly acknowledge and waive, either in writing or orally on the record, her right to testify, to have prosecution witnesses testify in open court in her presence, to question the prosecution witnesses, and to require any favorable witnesses to testify in her behalf. *Thompson*, 694 N.W.2d at 122. The court held that, although Thompson orally waived the right to a jury trial, she did not waive either in writing or orally on the record the specific rights set out in Rule 26.01, subdivision 3, and, as a result, the sentence imposed violated Thompson's right to a jury trial on the aggravating factors. 694 N.W.2d at 123.

On appeal to this court, the state makes a number of arguments. The state argues that Thompson failed to preserve any claim under *Blakely* because she did not raise a *Blakely* claim in the district court. The state also argues that Thompson

waived her right to have a jury determine the existence of sentencing enhancement factors supporting the upward durational departure. Finally, the state argues that Thompson's sentence as imposed by the district court was constitutional and did not violate Thompson's right to have a jury trial under *Blakely* because the sentencing departure was based solely on facts admitted by Thompson as part of her guilty plea.

## I.

■ We first address the state's argument that Thompson failed to preserve the *Blakely* issue because she did not raise it in the district court. We find this argument both curious and lacking in merit. At the sentencing hearing, before the district court imposed its sentence, an issue arose with respect to compliance with the Supreme Court's *Blakely* decision, which had been issued the day before. The issue was resolved by Thompson's on-the-record waiver of her right to have a jury determine sentencing enhancement factors. Thus, the *Blakely* issue was squarely before the district court. In that the *Blakely* issue was squarely before the district court, it is sufficiently preserved for appeal.[2]

## II.

■ We next address the state's argument that Thomson's on-the-record waiver of her right to have a jury determine the existence of sentencing enhancement factors supporting the upward sentencing departure was valid. According to the state, this issue is governed by Rule 26.01, subdivision 1(2)(a), of the Minnesota Rules of Criminal Procedure, which provides that a criminal defendant with court approval "may waive jury trial provided the defendant does so personally in writing or orally upon the record in open court, after being advised by the court of the right to trial by jury and after having had an opportunity to consult with counsel." In response, Thompson argues that a jury trial for purposes of establishing sentencing enhancement factors is more akin to a trial on stipulated facts and therefore the waiver of the right to a jury trial is governed by Minn. R.Crim. P. Rule 26.01, subd. 3, which provides that for such trials

> the defendant shall acknowledge and waive the rights to testify at trial, to have the prosecution witnesses testify in open court in the defendant's presence, to question those prosecution witnesses, and to require any favorable witnesses to testify for the defense in court. The agreement and waiver shall be in writing or orally on the record.

Minn. R.Crim. P. 26.01, subd. 3. Relying on Rule 26.01, subdivision 3, Thompson argues, and the court of appeals held, that because she did not, either in writing or orally on the record, acknowledge and waive the rights set out in that rule, her waiver of the right to a jury trial on sentencing enhancement factors was invalid.

■ As we explained in *State v. Verschelde*, 595 N.W.2d 192, 195 (Minn.1999), a trial on stipulated facts is a limited procedure that allows a "defendant to enter a plea of *not guilty*, waive his right to a jury trial, and then stipulate to the prosecution's case." (Emphasis added.) In explaining the rationale for allowing that procedure, we stated that:

> The *Lothenbach* court recognized that Minnesota, unlike some other states, did not allow a defendant to make a condi-

---

**2.** The state's failure-to-preserve argument also fails based on our recent decision in *State v. Osborne*, 715 N.W.2d 436 (Minn.2006). In *Osborne*, we held that a defendant's rights under *Blakely* cannot be forfeited by mere silence. 715 N.W.2d at 443.

tional guilty plea. Therefore, to preserve the right to appeal a pretrial issue, a defendant was required to plead not guilty, and then put himself and the state through a jury trial, even if no material facts were in dispute. To respond to this inefficient use of judicial resources, the *Lothenbach* court set forth a procedure that preserves a defendant's right of appeal and avoids an otherwise unnecessary jury trial. The *Lothenbach* procedure calls "for the defendant to enter a plea of not guilty, waive his right to a jury trial, and then stipulate to the prosecution's case." Thus, a *Lothenbach* stipulation can benefit a defendant by preserving the defendant's right of appeal.

*Verschelde,* 595 N.W.2d at 194–95 (discussing *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn.1980)) (internal citations omitted). That rationale does not carry over to situations such as here in which the defendant has admitted sufficient facts to establish the elements of the charged offense, pleaded guilty, and waived all nonjurisdictional claims.

Here, Thompson informed the district court that she wanted the court, and not a jury, to decide whether there was a factual basis for a sentencing departure. Thompson, however, did not stipulate to facts for the purpose of determining sentencing enhancement factors. Consequently, the district court engaged in judicial fact-finding and found several aggravating factors, which led it to the conclusion that Thompson's offense was "a major economic offense." This procedure of determining sentencing enhancement factors is more akin to a bench trial regarding the elements of an offense than to a trial based on stipulated facts. We therefore conclude Thompson's waiver of her right to a jury

trial on sentencing enhancement factors is governed by Minn. R.Crim. P. 26.01, subd. 1(2)(a).

■ Having concluded that Rule 26.01, subdivision 1(2)(a), governs, we now turn our attention to whether Thompson's waiver in this case complied with that rule. In *State v. Dettman,* we held that a defendant's waiver of the right to a jury determination of aggravating sentencing factors must be made knowingly, voluntarily, and intelligently. 719 N.W.2d 644, 651, 2006 WL 2290986, at *5 (Minn. 2006). A waiver made in compliance with Rule 26.01, subdivision 1(2)(a), meets the knowing, voluntary, and intelligent requirement.

■ Specifically, at the beginning of her sentencing hearing, the court informed Thompson of the *Blakely* decision and of her right to a jury trial on sentencing enhancement factors. Thompson's counsel then informed the court that he was able to successfully explain the *Blakely* issue to Thompson and that she was willing to waive her right to a sentencing jury *"to the extent she needs to waive that right in this proceeding."* (Emphasis added.) The court then asked Thompson, on the record in open court, if she had any questions about the *Blakely* issue. Thompson responded that she did not. Thompson was then asked whether she wanted a jury or the court to decide whether there was a factual basis for a sentencing departure. She responded that she wanted the court to decide that question, not a jury. The court then asked, "Do you understand you have a right for a jury to decide that proof [sic] beyond a reasonable doubt, and you are waiving that right or giving up that right, is that correct?" to which Thompson replied, "Yes. That's correct." [3] Based on

---

**3.** While Thompson did not, at her sentencing hearing, acknowledge that she was waiving

each of the rights set out in Minn. R.Crim. P. 26.01, subd. 3, it should be noted that at her

the above record, we conclude that Thompson's waiver of the right to a jury trial on sentencing enhancement factors complied with Rule 26.01, subdivision 1(2)(a), and was therefore knowing, voluntary, and intelligent.

■■■■ We turn our attention next to whether the enhanced sentence imposed by the sentencing court comports with the requirements of the sentencing guidelines. We review a trial court's decision to depart from the guidelines' presumptive sentence for an abuse of discretion. *State v. Shattuck*, 704 N.W.2d 131, 140 (Minn.2005). "Substantial and compelling circumstances must be present in the record to justify departures from the applicable presumptive sentences in the Minnesota Sentencing Guidelines." *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn.2002); *see also State v. Geller*, 665 N.W.2d 514, 516 (Minn.2003).

Under the sentencing guidelines, a court may impose an upward sentencing departure on a defendant who commits a major economic offense. "Major economic offense" is defined as a nonphysical economic offense that includes two or more of the five listed aggravating factors found in the sentencing guidelines. Minn. Sent. Guidelines II.D.2.b(4); *State v. Carr*, 361 N.W.2d 397, 402 (Minn.1985). The listed aggravating factors are:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Minn. Sent. Guidelines II.D.2.b(4).

Here, in explaining its upward sentencing departure, the sentencing court stated:

This is a departure with respect to counts 5, 6, 7, 8 and 9, all of the 57–month commitment-to-prison offenses. * * * The reason I am doing that is that the record and the proof establishes beyond a reasonable doubt that this is a major economic offense as defined by the sentencing guidelines and by Minnesota Statute, that here there were *multiple incidents beyond what was necessary for the aggregation to the theft over*

plea hearing, which took place less than three months before the sentencing hearing, Thompson acknowledged in the plea petition and/or orally on the record: that she was represented by counsel; that her counsel had explained her rights to her; that she had read the complaint and understood the charges against her; that she was mentally competent; that she knew the maximum sentence she was facing; and that she was aware of and understood her right to either testify or remain silent as she chose. She also indicated that she understood that her right to a jury trial included the right to: a trial by a 12–

person jury; the presumption of innocence; confront the witnesses against her; call witnesses on her own behalf; and have guilt proved beyond a reasonable doubt. Although our conclusion that Thompson's waiver of her right to a jury trial on sentencing enhancement factors was knowing, voluntary, and intelligent, is not based on Thompson's acknowledgments and understanding of her rights at the time of her guilty plea, her acknowledgements and understanding at that time, on the record presented here, further support that conclusion.

*$35,000.* * * * [I]n the last count there were hundreds of incidents that could have been charged as many, many theft–over–2500s. There were many, many, many incidents beyond what was needed either for theft over 2500 or theft over 35,000. That's true in each of these counts even without the multiple incidents. I mean, I think where matters are aggravated, to take it up to the next level of seriousness, there have to be more incidents than are necessary to aggravate—aggregate the matter.

And while the statute doesn't say that, I think that it's necessary and required under the law since the Court is required to consider factors other than what the state has to prove at sentencing, and I think that there are many incidents beyond what was needed to be proved at sentencing in each of the counts where there is a departure.

The *amount taken is substantially greater than $35,000 incident* [sic]. In most of the matters—counts where there is a departure the amount taken was more than * * * double, the amount that was taken was well into the $70,000 range.

Secondly, *there was a high degree of sophistication and planning used in this incident.* * * * by putting people on the payroll, former employees, and then immediately taking them off and hiding that and having it evade auditors' or anybody else's detection for a six-year period, that that level of sophistication and planning is well beyond a standard theft by swindle.

And lastly, I think there is a sufficient basis to establish beyond a reasonable doubt this was a *violation of trust and confidence in your fiduciary relationship* as the person who managed the books and handled the money and was entrusted to do that by the organization.

(Emphasis added.) Thus, the sentencing court relied on four of the aggravating factors specified in the guidelines—multiple incidents, monetary loss substantially greater than the minimum loss specified in the statute, high degree of sophistication or planning, and use of position of trust to facilitate the commission of the offense—to support its conclusion that Thompson committed a major economic offense. We will address each of the factors in turn. Under the guidelines, if any two of the guidelines' factors relied on by the sentencing court for its major economic offense finding are supported by the record, we must affirm the sentence imposed by the sentencing court. *See* Minn. Sent. Guidelines II. D.2.b(4) (stating that a "major economic offense" includes *"two or more* of the circumstances listed") (emphasis added).

■ With respect to multiple incidents, the sentencing court found that Thompson committed "multiple incidents beyond what was necessary for the aggregation to the theft over $35,000." Thompson was charged by complaint with nine counts of theft by swindle, each over $35,000 in the aggregate. Each count set out in detail each incident of theft. Attached to the complaint was a chart itemizing each specific transaction underlying each of the nine theft counts with which Thompson was charged. With the exception of the total amount alleged in count 9, Thompson admitted to the accuracy of each transaction alleged in each count and pleaded guilty based on the specific facts alleged in each count. The district court found Thompson guilty and convicted and sentenced her on each count as alleged in the complaint.

■ In *State v. Osborne,* 715 N.W.2d 436 (Minn.2006), we pointed out that "conduct underlying one conviction for which a defendant was sentenced cannot be used to support an upward sentencing departure

for a separate conviction." *Id.* at 446. This is because "a defendant should not be punished twice for the same conduct." *Id.* In this case, Thompson's convictions and sentences were based on all of the individual transactions. Accordingly, the sentencing court's use of these transactions again to support its major economic offense finding amounted to using the underlying conduct from one conviction for which Thompson was convicted to support the upward departures for separate convictions. Therefore, it was an abuse of discretion for the sentencing court to rely on multiple incidents as a guidelines' aggravating factor.

■■■■ For the same reason, it was also an abuse of discretion for the district court to use, as a guidelines' aggravating factor, the fact that the monetary loss involved was substantially greater than the minimum specified in the statute. Moreover, a sentencing court may not base an upward durational departure on factors that the legislature has already taken into account in determining the degree of seriousness of the offense. *Shattuck,* 704 N.W.2d at 140. In other words, "elements of an offense cannot be used as aggravating factors to impose an upward sentencing departure for that same offense." *Osborne,* 715 N.W.2d at 446 (citing *State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983)). Here, Thompson pleaded guilty to nine counts of "theft by swindle aggregated over $35,000" as alleged in the complaint. Because of the detailed nature of each count within the complaint and because the district court found Thompson guilty beyond a reasonable doubt on each count as alleged in the complaint, use of this factor amounted to using a factor necessarily used in convicting Thompson on each count to support the finding that Thompson engaged in a major economic offense.

That sort of double counting is impermissible. *Id.*

■■■■ The district court did not err, however, when it based its major economic offense finding on its findings that Thompson's offense involved a "high degree of sophistication and planning" and that Thompson used a position of "trust" and "confidence" and her "fiduciary relationship" to commit the offenses. First, as discussed earlier, because Thompson waived her right to a jury trial on sentencing enhancement factors and consented to the court making findings on those factors, the sentencing court here had the authority to make such findings. Moreover, there was ample evidence from which the judge, as fact-finder, could find beyond a reasonable doubt that Thompson's offenses involved a high degree of sophistication and planning and that she used a position of trust, confidence, or fiduciary relationship to facilitate her offenses. Thompson acknowledged during her guilty plea that she had been employed as a finance manager at Rueben Lindh and was responsible for the employee payroll. Further, Thompson admitted that she "us[ed] payroll accounts for discharged employees and process[ed] payroll checks under those employee accounts but funnel[ed] the money into [her] own bank accounts," as well as "over[paid] [her]self cafeteria plan benefits." As the district court correctly pointed out, "putting people on the payroll * * * and then immediately taking them off and hiding that and having it evade auditors' or anybody else's detection for a six-year period, that that level of sophistication and planning is well beyond a standard theft by swindle."

Because the sentencing court's findings that Thompson's offenses involved a high degree of sophistication or planning and that Thompson used a position of trust, confidence, or fiduciary relationship to

commit the charged offenses are fully supported by the record, we conclude that the sentencing court did not abuse its discretion when it found, under the sentencing guidelines, that Thompson committed a major economic offense. Therefore, the

4. The dissent's concern that *Blakely* calls into question the practice we adopted in *Williams v. State*, 361 N.W.2d 840 (Minn.1985), which permits appellate courts to examine the record to determine whether the reasons given by the trial court justify the departure, although legitimate, is not implicated by our decision in this case. And, while we agree with the dissent that, in light of *Blakely*, we may need, at some point, to consider our past "willingness * * * to independently examine the record to determine whether there are legitimate reasons for a departure where the reason given by the district court is inadequate or improper," we need not do so here because our decision in this case does not involve such a practice. Contrary to the dissent's assertion, in affirming Thompson's sentence we have not engaged in any "independent weighing of the aggravating factors" or "exercise of discretion." Rather, we affirm the sentence because, as a matter of law, the sentencing court, properly applying the sentencing guidelines, found that Thompson committed a major economic offense.

We have consistently held that an upward sentencing departure is appropriate if the trial court's reason for departure was based on the factors specified in the sentencing guidelines and if the extent of the departure was "limited to that justified by the reason for departure." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981); *see also State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981). In this case, the sentencing court imposed the upward sentencing departure based on the major economic offense sentencing factor, and not, as the dissent asserts, on the underlying individual aggravating factors. Absent an abuse of discretion by the sentencing court in finding that Thompson's offense constituted a major economic offense, we will not reverse the court's sentence. *See State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). Further, because the departure imposed is within the general permissible range, the sentencing court did not abuse its discretion in setting the length of departure. *See Perkins v. State*, 559 N.W.2d 678, 692 (Minn.1997) (stating that our court has followed a general rule that

sentence imposed by the trial court must be affirmed.[4]

Reversed.

GILDEA, J., took no part in the consideration or decision of this case.

when aggravating factors justify upward departure "the upper limit will be double the presumptive sentence length") (quoting *Evans*, 311 N.W.2d at 483). Thus, the dissent's proposition that we should "vacate Thompson's sentence and remand for resentencing to allow the district court to determine the appropriate weight to be given to the remaining departure factors and to determine the appropriate level of departure" is inconsistent with our case law and not mandated by *Blakely*.

We also note that, because Thompson knowingly, voluntarily, and intelligently waived her right to a jury trial on the sentencing enhancement factors and because our conclusion that the sentencing court's finding that Thompson had committed a major economic offense is supported by the record and did not involve the "independent weighing of the aggravating factors" or "the exercise of discretion" by this court, the dissent's concern as to whether Thompson consented to "our independent weighing of the aggravating factors" is unfounded. Here, there simply is no question that as defined under II.D.2.b(4) of the guidelines, the presence of the two factors found by the sentencing court—the high degree of sophistication and planning, and the use of a position of trust, confidence, and the fiduciary relationship—is sufficient to support the conclusion that Thompson's offense constitutes a major economic offense.

Moreover, from the guidelines' inception, we have reviewed sentencing departures to determine whether there is adequate record support for a finding that a particular departure factor—here, commission of a major economic offense—exists. This appellate function remains the same after *Blakely*, whether the finding is made by a jury or, as here, by a judge following the defendant's valid waiver of a jury trial on the issue. It would be curious indeed to hold, as the dissent suggests, that a defendant who validly waives a jury as to sentencing enhancement factors and appeals from the district court's imposition of an enhanced sentence is insulated from an appellate court performing this basic

HANSON, Justice (dissenting).

Although I agree with the conclusion of the majority that Thompson waived her right to a jury trial on sentencing factors, I conclude that Thompson's consent to have the district court determine those factors was ineffective to the extent that it did not include the possibility that this court could later reject some of the factors relied on by the district court but nevertheless affirm the same sentencing departure by an independent review of the record and a weighing of other sentencing factors. Accordingly, I would vacate Thompson's sentence and remand for resentencing to allow the district court to determine the appropriate weight to be given to the remaining departure factors and to determine the appropriate level of departure.

I recognize that our pre-*Blakely* case law reflected a willingness by this court to independently examine the record to determine whether there are legitimate reasons for a departure where the reason given by the district court is inadequate or improper. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). But I believe that *Blakely* has changed the landscape sufficiently to require us to reconsider that practice, both in general and in this case.

As to the general use of the practice, *Blakely* has perhaps sharpened our appreciation of the dynamics of a sentencing departure. When we assumed that the district court could perform the fact finding function, we had no occasion to reflect on the additional discretion that the district court possesses to determine whether and precisely how to depart after finding that there were aggravating facts. Now that *Blakely* has clarified that the fact finding function must be done by the jury, unless waived by the defendant, the other function of the district court, to exercise discretion in determining whether and how to depart, comes into clearer focus.

In other words, even if a sentencing jury is used and it finds aggravating facts, the decisions to depart and by how much to depart are not automatic, but call upon the district court to exercise discretion, based on the court's broader experience in sentencing and ability to compare the facts of the current case, as found by the jury, with the facts of other similar cases. Of course, the district court has no discretion to depart unless the jury finds aggravating facts, but conversely the district court has discretion not to depart, or to decide precisely how much to depart, where the jury finds aggravating facts. In my view, this discretion was not altered by *Blakely*.

Given this better clarity on the discretionary role of the district court, I conclude that the practice of this court of independently examining the record and weighing the facts to sustain a particular departure that was based on both proper and improper factors is generally unwise and should be discontinued. Instead, where this court concludes that some of the aggravating factors relied on by the district court were erroneous or improper, it should remand for resentencing to allow the district court to exercise the necessary discretion to decide on the proper sentence, based on the district court's evaluation of the remaining aggravating factors.

It is true, as noted by the majority, that the district court's finding that Thompson committed a major economic offense, which we conclude was supported by the minimum of two qualified aggravating factors, conferred on the district court the discretion to impose a double upward sentencing departure. But that departure was not made mandatory or automatic under the Minnesota Sentencing Guidelines.

kind of sufficiency review on the ground that    she did not consent to it.

 

Thus, although the district court could have reached the same departure decision for a major economic offense supported by two qualified aggravating factors as it did when it believed its finding of a major economic offense was supported by four qualified aggravating factors, we cannot be sure that it would have because that decision is left to the district court's discretion. In other words, the finding of a major economic offense, whether made by the court or a jury, does not end the matter, and the district court must then exercise discretion to decide whether to depart and, if so, by how much.

Moreover, where, as here, the defendant has waived the right to a sentencing jury, the question arises whether the defendant's consent to fact finding by the district court includes an independent review of the record and the exercise of discretion by this court. The advisory given to Thompson by the district court, to enable her to make a knowing, intelligent, and voluntary waiver, did not include any mention of that possibility. And the consent given by Thompson was specific to the district judge—"I wish you to decide it, not the jury."

On this record, Thompson's consent was not broad enough to encompass our independent weighing of the aggravating factors. Further, her consent contemplated that the district court, after finding the facts, would exercise discretion in deciding whether and how to depart. Because we can only speculate about how the district court might have exercised that discretion, based on two instead of four aggravating factors, and because we are not engaged in the day to day function of criminal sentencing, we should not presume that the district court would exercise its discretion in precisely the same manner, but should remand to the district court for resentencing.

MEYER, Justice (dissenting).

I join in the dissent of Justice Hanson.