**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1313**

State of Minnesota,
Respondent,

vs.

Robert John Meyers,
Appellant.

**Filed September 15, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1212589

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Willis, Judge.[*]

**S Y L L A B U S**

Departure from a presumptive sentence is properly based on the aggravating factor articulated in Minn. Sent. Guidelines II.D.2.b.(3) (2010) when the underlying conviction involves injury, even if injury is an essential element of the conviction. The category of offenses subject to an upward departure under this factor includes those current

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

convictions that involve harm or criminal sexual conduct; the basis for departure is that the offender has a prior conviction of an offense involving harm or criminal sexual conduct.

<b>O P I N I O N</b>

**REYES**, Judge

Appellant argues that the district court erred by imposing an upward durational departure based on an aggravating factor that duplicated an element of his conviction for first-degree assault and an aggravating factor that was not noticed by the state. Appellant also argues that his conduct was not significantly more serious than the typical first-degree assault, and, therefore, no substantial and compelling circumstances warranted an upward departure. Because we conclude that the district court had valid grounds for departure and did not abuse its discretion by determining that substantial and compelling circumstances were present, we affirm.

<b>FACTS</b>

On April 19, 2012, around 4:00 p.m., A.C. was entering her car in a downtown Minneapolis parking ramp when she was attacked from behind by appellant Robert John Meyers. A.C. felt something at her throat and discovered that it was a knife when she reached up to grab the object, cutting her thumb. When A.C. screamed and fought back, Meyers said to her, "We're going for a ride." As A.C. continued to scream, Meyers attempted to cover her mouth with his hand and A.C. bit him. Meyers then stabbed A.C. in the abdomen. A.C. ended up seated in the driver's seat of her car, facing Meyers, who was dressed in a business suit and holding a bloody hunting knife. A.C. asked Meyers

2

what he wanted from her and offered him her car and the other possessions that she had with her. Meyers then looked at A.C. and said, "You're lucky you're a fighter," before turning and walking away.

After locking herself inside her car, A.C. called 911. Because the dispatch center could not determine her location, A.C. ran down four stories on the exit ramp to the bottom of the parking ramp and sought assistance from the ramp's attendant. An ambulance then transported A.C. to the hospital, where she underwent surgery for her injuries and remained for six days. A.C. suffered a ten-inch knife wound that penetrated the left side of her liver and pierced her adrenal gland, which was a life-threatening injury. She also suffered permanent nerve damage to her thumb, as well as other lacerations.

Meyers was apprehended later that day after stealing a woman's purse in another downtown parking ramp. He was identified as a suspect in A.C.'s stabbing after officers reviewed surveillance-video footage from the parking ramp.

Meyers was indicted on three charges: attempted first-degree criminal sexual conduct, first-degree assault, and attempted kidnapping. The state moved for an upward departure from the sentencing guidelines based on evidence that A.C. was injured and that Meyers had a prior felony conviction for sexual assault. A jury trial was held, and the jury found Meyers not guilty of attempted first-degree criminal sexual conduct and guilty of first-degree assault. The jury was unable to reach a verdict on the attempted-kidnapping charge.

After the verdict was read, the court instructed the jury to determine departure grounds, and the jury was given a special-verdict form asking it to decide two facts: "whether or not in the course of the commission of the assault, [Meyers] intentionally injured [A.C.] and, whether or not at the time of the commission of [the assault], [Meyers] had a previous conviction for criminal sexual conduct to wit: [s]exual abuse in the third degree in the Iowa District Court in and for the County of Washington on June 17, 2002." Meyers stipulated to the prior conviction. The jury answered both fact questions affirmatively.

At the sentencing hearing, Meyers argued that the aggravating factors found by the jury could not be used for an upward departure in Meyers's sentence because they duplicated an element necessarily proved to convict him of assault. The district court disagreed based on its reading of the sentencing guidelines and related law and sentenced Meyers to 240 months in prison, an upward departure from the presumptive sentence of 158 months. The district court based its departure on its assessment that substantial and compelling circumstances existed for departure from the guidelines: (1) the current conviction resulted in injury to the victim and Meyers had a prior conviction for sexual assault and (2) Meyers acted with particular cruelty. This appeal follows.

**ISSUES**

I.      Did the district court err by identifying Minn. Sent. Guidelines II.D.2.b.(3) as a valid ground for departure?

4

II.     If not, did the district court abuse its discretion by determining that this crime was significantly more serious than the typical first-degree assault and imposing an upward durational departure?

**ANALYSIS**

"[A] sentencing court has no discretion to depart from the sentencing guidelines unless aggravating or mitigating factors are present." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999). As to the factual basis for the departure, a presumptive sentence must be imposed unless "identifiable, substantial, and compelling circumstances" warrant an upward departure. Minn. Sent. Guidelines II.D. (2010). Substantial and compelling circumstances are those showing that the defendant's conduct was significantly more serious than that typically involved in the offense. *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009). Whether the district court identified valid grounds as the basis for a departure is a matter of law, which we review de novo. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). When aggravating circumstances are present, the district court has discretion to depart, *State v. Stanke*, 764 N.W.2d 824, 827 (Minn. 2009), and this court reviews a district court's departure decision for abuse of discretion, *State v. Reece*, 625 N.W.2d 822, 824 (Minn. 2001).

The district court stated that its departure was based on the facts that Meyers's current conviction "was for an offense in which the victim was injured and [Meyers] had a prior felony conviction in which the victim was injured" and that Meyers acted with particular cruelty, assessing that his conduct "was at the outer limits of criminal conduct for [f]irst [d]egree [a]ssault," falling just short of murder. Meyers argues that the district

5

court erred by imposing an upward durational departure for his conviction because (1) the district court improperly relied on elements of the offense in assessing the aggravating factors; (2) the district court improperly relied on the particular-cruelty factor, which was not an aggravating factor of which the state gave notice or a factor considered by the jury; and (3) Meyers's conduct was not significantly more serious than the typical first-degree assault case.

## I.      Grounds for departure

A valid ground for departure exists when "[t]he current conviction is for a [c]riminal [s]exual [c]onduct offense or an offense in which the victim was otherwise injured and there is a prior felony conviction for a [c]riminal [s]exual [c]onduct offense or an offense in which the victim was otherwise injured."  Minn. Sent. Guidelines II.D.2.b.(3)[1]; *see also* Minn. Stat. § 244.10, subd. 5a(a)(3) (2010) (repeating this language in listing aggravating factors that may be used to deviate from the sentencing guidelines). Based on the jury's findings of fact, the district court relied on this aggravating factor as a reason for imposing an upward departure in sentencing Meyers.

Meyers argues that this ground for departure is improper because it relies on an element of the offense of conviction – namely that the victim was injured[2] – citing the

---

[1] In the current version of the sentencing guidelines, this aggravating factor has been renumbered as Minn. Sent. Guidelines 2.D.3.b.(3) (2014), and the language is slightly different, but the application remains the same.

[2] To convict Meyers of first-degree assault, the state had to prove that he assaulted A.C. and inflicted great bodily harm on her.  Minn. Stat. § 609.221, subd. 1 (2010).  "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or

6

proposition that "elements of an offense cannot be used as aggravating factors to impose an upward sentencing departure for that same offense." *State v. Osborne*, 715 N.W.2d 436, 446 (Minn. 2006). But the supreme court's ruling in *State v. Peake* establishes that departure is permissible when the current conviction is for an offense that involves injury to the victim and the defendant has a prior felony conviction for an offense involving injury to a victim, whether or not injury to the victim was an essential element of the conviction. 366 N.W.2d 299, 301 (Minn. 1985). Meyers contends that *Peake* has been "effectively overruled" by recent jurisprudence. This argument is unavailing.

Meyers relies on *State v. McIntosh*, 641 N.W.2d 3 (Minn. 2002), and *State v. Thompson*, 720 N.W.2d 820 (Minn. 2006), to support the proposition that an element of an offense cannot be used as an aggravating factor. In *McIntosh*, the defendant was convicted of four controlled-substance offenses, one of which was for second-degree sale of a controlled substance (three grams or more of cocaine). 641 N.W.2d at 5. The district court imposed an upward departure for that conviction after determining that it was a "major controlled substance offense" as defined in the list of aggravating factors in the sentencing guidelines. *Id.* The district court cited three sub-factors for support, including the fact that the quantity involved was substantially larger than for personal use. *Id.* The supreme court reversed the upward departure, finding insufficient support in the record for these factors, but cautioned courts "against using quantity to support a

---

protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2010).

7

departure under the major controlled substance offense departure criteria when to do so duplicates an element of the offense." *Id.* at 12.

In *Thompson*, the defendant was convicted of nine counts of theft by swindle over $35,000, and the district court imposed an upward durational departure assessing that she had engaged in a major economic offense, an aggravating factor defined by the sentencing guidelines. 720 N.W.2d at 823. The district court there found that the defendant's conduct fell under four of the sub-factors for this aggravating factor, including that the offense involved a substantially greater monetary loss than the minimum specified by the statute. *Id*. at 825. The supreme court determined that the district court abused its discretion by applying that particular sub-factor, assessing that "use of this factor amounted to using a factor necessarily used in convicting Thompson on each count to support the finding that Thompson engaged in a major economic offense. That sort of double counting is impermissible." *Id.* at 830.

The precedent set by these cases is not applicable here. First and foremost, Minn. Sent. Guidelines II.D.2.b.(3) specifically addresses repeat violent offenders. In *Peake*, the supreme court assessed that this aggravating factor is a recognition by the guidelines of "the unfairness of treating all felonies the same in determining criminal history" and that "where past crimes are violent and the present crime [is] a continuation of the violence, departure is permissible under the guidelines." 366 N.W.2d at 301. In *State v. Petschl*, this court repeated that concern about recidivism in addressing Minn. Sent. Guidelines II.D.2.b.(3) (1997), stating:

8

> an appellant's prior conviction for a crime involving injury to a victim alone may be sufficient to justify an upward durational departure. *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). "This is so because repeated crimes against persons pose a greater threat to society than repeated property crimes." *State v. Larson*, 379 N.W.2d 165, 167 (Minn. App. 1985).

692 N.W.2d 463, 472-73 (Minn. App. 2004), *review denied* (Minn. Jan. 20, 2005). It is within the legislature's purview to enact statutes and exceptions to general sentencing rules to address specific conduct that it determines to be eligible for increased punishment. *State v. Jones*, 745 N.W.2d 845, 850 (Minn. 2008) (stating that a statutory amendment authorizing cumulative punishment for certain crimes, amounting to an exception to the general prohibition of such punishment for conduct relating to the same behavioral incident, "reflect[s] legislative determinations concerning specific conduct that is eligible for increased punishment even when committed as part of the same behavior incident."). And Minn. Sent. Guidelines II.D.2.b.(3) was established to address repeated crimes against persons, making such conduct eligible for increased punishment. The cases cited by Meyers do not contemplate the violent recidivist behavior against persons addressed by this aggravating factor.

Additionally, Minn. Sent. Guidelines II.D.2.b.(3) is not duplicative in its consideration of victim injury. Rather, this consideration serves to limit the applicability of this aggravating factor. The category of convictions to which this factor may be applied is limited to those "for a [c]riminal [s]exual [c]onduct offense or an offense in which the victim was otherwise injured." Minn. Sent. Guidelines II.D.2.b.(3). If a conviction falls into this category, the basis for departure is that "there is a prior felony

9

conviction for a [c]riminal [s]exual [c]onduct offense or an offense in which the victim was otherwise injured." *Id.* In other words, the courts can consider this aggravating factor only if the current conviction is for a crime that involved injury to a victim, and the court can only apply this factor if the defendant has a previous conviction for a crime involving injury to a victim.

Likewise, other enumerated aggravating factors are limited in applicability to certain categories of crimes based on articulated grounds for departure. *See, e.g.*, Minn. Sent. Guidelines II.D.2.b.(4) (2010) (limited in application to illegal acts involving "concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage" and requiring the presence of at least two of five sub-factors to serve as grounds for departure); Minn. Sent. Guidelines II.D.2.b.(5) (2010) (limited in application to offenses "related to trafficking in controlled substances under circumstances more onerous than the usual offense" and requiring the presence of at least two of seven sub-factors to serve as grounds for departure). As recognized in *Peake*, *Larson*, and *Petschl*, Minn. Sent. Guidelines II.D.2.b.(3) provides a mechanism for addressing repetitive violent behavior that is not otherwise addressed by the sentencing guidelines or criminal statutes.

Furthermore, *McIntosh* and *Thompson* illustrate a general policy against imposing an upward departure based on facts already used to determine the degree or severity of the crime, which is a key factor in determining the sentence on conviction.[3] "A basic

---

[3] In *McIntosh*, a key element of the appellant's conviction for *second-degree* sale of a controlled substance was the quantity of the cocaine, whereas lesser degrees of the same

10

tenet of Sentencing Guidelines jurisprudence is that the district court may not base an upward durational departure on factors that the legislature has already taken into account in determining the degree or seriousness of the offense." *State v. Shattuck*, 704 N.W.2d 131, 140 (Minn. 2005). As applied in this case, the aggravating factor set forth in Minn. Sent. Guidelines II.D.2.b.(3) does not contravene this policy. The statute under which Meyers was convicted does not already take into account his prior conviction in determining the degree or severity of the present conviction. And while proof that Meyers caused injury was required to convict him of first-degree assault, this aggravating factor relates to unspecified injury or criminal sexual conduct, not an identified fact or element that might be used to enhance the particular degree of a crime or severity of the punishment. This is consistent with our reading that the requirement that the current conviction involves victim injury or criminal sexual conduct serves to limit the category of crimes to which this factor is applicable.

Contrary to Meyers's assertion, applying Minn. Sent. Guidelines II.D.2.b.(3) to a current assault conviction does not inherently contradict the general rule that elements of a conviction may not be used in imposing an upward sentencing departure. In fact, this application is expressly contemplated by the guidelines commission and legislature,

crime did not specify a quantity of cocaine necessary for conviction and were accompanied by a lesser punishment. Minn. Stat. §§ 152.022, .023 (1998). This is what made the district court's consideration of the quantity in assessing the presence of aggravating factors that warranted an upward departure impermissible. *McIntosh*, 641 N.W.2d at 12. Likewise, in *Thompson*, the aggregate value of property swindled determined the severity of the punishment imposed for Thompson's conviction for theft by swindle, so the district court abused its discretion by again considering the value of the property stolen when assessing that Thompson had engaged in a major economic offense warranting an upward departure. 720 N.W.2d at 830.

which fashioned a means to impose an enhanced punishment based on the nature of a defendant's prior conviction. While there may be scenarios where application of this aggravating factor would inappropriately duplicate a factor already taken into account by the legislature in determining the degree or seriousness of the offense, this is not such an instance. There was no duplicative consideration of essential elements of Meyers's first-degree assault conviction, and the district court did not err by determining that there were valid grounds for departure under Minn. Sent. Guidelines II.D.2.b.(3). Meyers demonstrated the exact behavior targeted by this aggravating factor by committing a subsequent violent crime after his first conviction for criminal sexual assault. Because only one aggravating factor is necessary to serve as a basis for departure, we need not address Meyers's argument that the district court improperly relied on the particular-cruelty factor. *See Dillon*, 781 N.W.2d at 599 ("[A] single aggravating factor may justify a departure.").

## II.     Decision to impose upward departure

Because there were adequate grounds upon which to base the departure, we next review the district court's decision to depart for an abuse of discretion. *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003). Meyers argues that the district court did not articulate how this crime was significantly more serious than the typical first-degree assault, contending that the district court erroneously focused on the nature of A.C.'s injuries instead of Meyers's conduct. We disagree.

12

In addition to addressing the injuries Meyers inflicted on A.C., the district court focused on the egregious nature of Meyers's conduct. Responding to Meyers's claim that he intended to steal A.C.'s car, the court stated:

> [Y]ou could have taken that and accomplished your mission of stealing her car, or you could have simply turned and fled when you found that this woman was as courageous a woman as I have ever heard about . . . .
> And instead, despite her repeated requests asking you what it is you wanted, you decided, in the [c]ourt's view, to act with particular cruelty toward her by gratuitously physically assaulting her by putting a knife to her throat, then goading her by telling her that you two were going to go for a ride. And then when she further resisted, you plunged a knife into her stomach with such significant force that she lost two liters of blood, she was in critical condition, she had a significant laceration of her adrenal gland, the knife went through her liver.
> And with those significant injuries, what is it that Mr. Meyers did? He turned and calmly walked away.

As the district court's analysis reflects, Meyers's conduct was unprovoked and seemingly motivated by a desire to be violent simply for the sake of violence. This behavior differs from the allegedly typical assault cases cited by Meyers and is especially concerning given Meyers's demonstrated pattern of violent conduct. Additionally, the jury determined that Meyers *intentionally* injured A.C., which exceeds the requirements of a typical assault. *See State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) (holding that assault-harm is a general-intent crime, meaning that proof that the defendant intended to cause a particular result is unnecessary to convict). Meyers acted deliberately in causing great bodily harm to A.C. and did so without provocation or motivation other than causing injury. The district court did not abuse its discretion by determining that

13

Meyers's conduct was significantly more serious than the conduct involved in a typical first-degree assault.

## D E C I S I O N

The district court did not err by determining that Minn. Sent. Guidelines II.D.2.b.(3) provided adequate grounds for departure, and it did not abuse its discretion by imposing an upward durational departure.

**Affirmed.**